**John R. NEICE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 580S147.

Supreme Court of Indiana.

June 23, 1981.
Rehearing Denied Oct. 6, 1981.

Dennis R. Majewski, Terre Haute, for appellant.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Neice was convicted following a trial by jury on two counts of burglary, two counts of attempted rape, one count of attempted child molestation, and one count of public indecency. Ind.Code § 35–43–2–1; Ind.Code § 35–42–4–1; Ind.Code § 35–41–5–1 (attempt); Ind.Code § 35–42–4–3(c); and Ind.Code § 35–45–4–1(3), respectively. He received a sentence of ten years for each burglary and attempted rape, five years for

attempted child molestation, and one year for public indecency, all sentences to be served concurrently, except for the two burglary sentences which were ordered served consecutively.

■ This appeal does not satisfy the jurisdictional prerequisites of Ind.R.App.P. 4(A)(7), in that there has been no single sentence imposed carrying a minimum greater than ten years. *Menefee v. State*, (1981) Ind., 417 N.E.2d 302. However, since this appeal was instituted prior to our decision in *Menefee* and has been pending for some time, we exercise our inherent judicial authority to retain this case and to dispose of it on the merits rather than to order it transferred to one of the Courts of Appeal.

■ Appellant first contends that the evidence serving to show that he took a substantial step toward commission of the crime of rape on the alleged victims was insufficient. Ind.Code § 35–41–5–1(1)(a), defines attempt as follows:

"A person attempts to commit a crime when acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime."

Indiana Code § 35–42–4–1(a), provides the definition of rape pertinent here as follows:

"A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when ... the other person is compelled by force or imminent threat of force, commits rape...."

In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657; *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890.

■ Appellant relies upon *Herriman v. State*, (1962) 243 Ind. 528, 188 N.E.2d 272, and the analysis of the law of attempts in it. That analysis is no longer viable and has been supplanted by the statute itself. *Zickefoose v. State*, (1979) Ind., 388 N.E.2d 507. For an attempt to commit a crime, two elements must be present, namely, the culpability required for the crime attempted, and conduct constituting a substantial step toward the commission of the crime. The proper analysis focuses on what the accused has completed, and not upon what he has left undone. *Zickefoose, supra.*

■ The gravamen of the offenses challenged as unsupported, as shown by the evidence, was that at about 3:00 a. m., appellant, dressed only in shorts or pants surreptitiously entered the window of an apartment and proceeded to the bedroom where seventeen and sixteen year old sisters were sleeping in bunk beds. The one in the lower bunk woke up as he lay down on top of her. According to her testimony she immediately began to kick and fight him and then he held her and tried to caress her. Her sister woke up, fell out of the upper bunk and began screaming. Appellant, frightened, ran to the kitchen and tried unsuccessfully to get out the back door. The second sister followed him into the kitchen and kicked him, whereupon he turned upon her and tried twice to pull her underclothing down, struck her in the ear, and threw her to the floor. As he was about to lie down on top of her, her sister came into the kitchen and sprayed him from a can of mace. Appellant finally fled out the back door.

Appellant argues that the evidence is insufficient because appellant did not attempt to remove the clothing from the first sister or attempt actual penetration. He also contends that as to the second sister the evidence was insufficient because he did not succeed in removing her clothing and did not attempt penetration. In spite of the absence of conduct going so far, the evidence was sufficient. As to the first sister, appellant climbed into a lower bunk and upon her, in a position consistent with a

plan to accomplish penetration, and when confronted with her forceful resistance, caressed and held her. As to the second sister, appellant struck her a forceful blow to the head and threw her to the ground after trying repeatedly to pull her underclothing down, and prepared to get down on top of her. The evidence is not insufficient as contended, and was sufficient to warrant the verdicts of guilty of an attempt to rape.

▪ Appellant next contends that the trial court erred in permitting the State to get in evidence his statement taken by police at 10:00 a. m., following his arrest and detention on the same morning. The statement placed appellant in the area of the crimes at the times they were committed and was otherwise incriminating. At the hearing on the motion to suppress conducted during the trial, the burden was upon the prosecution to demonstrate to a certainty beyond a reasonable doubt that the statement and been given voluntarily after a voluntary, knowing and intelligent waiver of the right to counsel and the privilege against self-incrimination. *Ortiz v. State*, (1976) 265 Ind. 549, 356 N.E.2d 1188.

▪ Appellant asserts that he was under the influence of drugs and alcohol at the time he signed a written waiver and submitted to police questioning.

Officer Gilbert testified that he picked up appellant from the jail and took him to police station for fingerprinting, photographing, and questioning. When asked to describe appellant's demeanor at the time he answered:

"He seemed alright to me. He walked and talked alright. When I spoke with him during his interview he seemed coherent, to understand everything I said. When I read him his rights, he understood those. He read the form himself and said that he understood it and signed it. I noticed an odor of alcohol. I don't know how to describe it, like someone that had drank and slept for awhile. It was that odor after then, you could still tell that he had had some alcohol. But, as far as him being normal and coherent he was to me."

The officer testified further with regard to appellant's condition at the time.

"Q. Did he understand the various instructions that were given to him, things to do, places to go?

A. Yes.

Q. And he didn't have any problem following those?

A. Walked upstairs, walked downstairs, didn't have any trouble.

Q. Was he staggering or anything else as far as his walking was concerned?

A. No.

Q. Did he require. . . . As he walked along did he have to hold himself up by the wall, or any of those indications?

A. No sir. As a matter of fact, he was handcuffed, behind his back.

Q. Did—Was there—Besides the leftover smell of alcohol perhaps, did you, were there any other indications that he was under the influence of drugs or alcohol?

A. Not to me. I don't recall anything outstanding that I noticed about him.

\*  \*  \*  \*  \*  \*

Q. Did . . . . In his response to the questions, did he respond to the questions that you were asking?

A. Yes.

Q. Would you describe him as coherent and rational?

A. Yes, I would."

There was further testimony bearing on the suppression issue, including that of one officer who stated that appellant's pupils were dilated when he was arrested. Appellant's first statement taken by the police was to the effect that he had ingested alcohol and had smoked marijuana. A later statement given in the afternoon of the same day was to the effect that appellant had taken a drug he called "Angel Dust". This evidence provided the basis for an inference that appellant was to some degree under the

influence of drugs at the time of his waiver and interrogation, and such inference was to a degree in conflict with the interrogating officer's assessment of appellant's condition. That conflict was for resolution by the trier of fact. On review, we find the testimony of the interrogating officer to be susceptible of belief and sufficient to warrant a reasonable trier of fact in concluding beyond a reasonable doubt that appellant freely and knowingly relinquished his right to the presence of counsel and his privilege against self-incrimination and freely and voluntarily submitted to interrogation by the police. It was not therefore error to permit the introduction in evidence of his statement.

The convictions are affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.