Richard Dean SMITH, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 583S168.

Supreme Court of Indiana.

May 14, 1985.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Richard Dean Smith, was convicted by a jury of burglary of a dwelling, a Class B felony, Ind.Code § 35–43–2–1 (Burns 1984 Supp.), and attempted theft, a Class D felony, Ind.Code § 35–43–4–2 (Burns 1984 Supp.), and Ind.Code § 35–41–5–1 (Burns 1979 Repl.), and he was also found to be a habitual offender. Defendant was sentenced to the Indiana

Department of Correction for a period of twenty years for the burglary and four years for the attempted theft, such sentences to run concurrently. A sentence of thirty years was imposed based upon the habitual offender status. In this direct appeal, we consider the following seven consolidated issues:

1. Whether the trial court erred by failing to grant defendant's motion for discharge pursuant to Ind.R.Crim.P. 4(B)(1);

2. Whether the trial court erred by failing to grant defendant's tendered consent and mistake of fact instructions;

3. Whether the judge erred by failing to disqualify himself and by failing to grant defendant's motion for change of judge;

4. Whether the trial court erred by admitting into evidence at the habitual offender proceedings state's exhibits 1, 3, 6, 7, 8, and 9;

5. Whether the trial court erred by denying defendant's motion to delete from state's exhibit 2;

6. Whether the trial court erred by admitting an allegedly altered state's exhibit 10 during the habitual offender proceeding; and

7. Whether the trial court violated the prohibition against double jeopardy by sentencing defendant for both burglary and attempted theft, as charged.

A brief summary of the facts from the record shows that on August 2, 1982, the victim and his family were on vacation. The victim's neighbors had agreed to watch the victim's residence while they were on vacation.

Earlier in the day the neighbors had noticed a green Nova automobile with three young men drive slowly past the victim's home, staring at the home as they drove by. At approximately 10:00 p.m., these neighbors heard the sound of breaking glass. The neighbors then observed three men inside the victim's home and immediately telephoned the police.

After determining that there was someone in the victim's residence, the police completely surrounded the house. The police entered the victim's residence and followed the victim's dog to the attached garage wherein the dog alerted the officers to the presence of defendant.

The police apprehended defendant inside the garage attached to the victim's home. There was a broken window in the victim's northeast bedroom and a screwdriver pry mark on the rear door of the residence. In the hallway of the victim's residence there were several guns lined up against the wall and several articles were contained in a sack on the floor. A green Chevrolet Nova car was parked less than a quarter of a mile from the victim's residence.

I.

■ Defendant first argues that the trial court erred by denying his motion for discharge pursuant to Ind.R.Crim.P. 4(B)(1). This rule provides that a defendant shall be discharged if he is not brought to trial within seventy days after a motion for an early trial has been made. The sanction of discharge, however, will not be granted unless the criminal defendant both moves for an early trial and does not cause delay by a continuance or otherwise. *Taylor v. State* (1984), Ind. 468 N.E.2d 1378.

The record shows that on August 5, 1982, two days after defendant's arrest and while incarcerated, defendant filed a motion for a speedy trial in the Tippecanoe County Court. When the case was transferred to the Tippecanoe Superior Court, defendant renewed this motion on August 17, 1982. On August 23, 1982, the trial court set the trial date for October 19, 1982, five days beyond the seventy-day limit. However, the record indicates that the scheduling of the jury trial commencement date was done with the agreement of the parties and without objection by defendant. And, defendant did not file a motion to dismiss until October 18, 1982.

■ Consequently, defendant did not fully comply with the procedural requirements of Ind.R.Crim.P. 4(B)(1). This Court has held that it is incumbent upon defendant to object at the earliest opportunity

when his trial date is scheduled beyond the time limits prescribed by Ind.R.Crim.P. 4(B)(1). *Wilburn v. State* (1982), Ind., 442 N.E.2d 1098; *Heflin v. State* (1977), 267 Ind. 427, 370 N.E.2d 895. Defendant had the opportunity to object to the trial date at the scheduling conference, yet no objection was made. It appears that the first time defendant raised this issue was when he filed his motion to dismiss pursuant to Ind. R.Crim.P. 4(B)(1). This motion to dismiss was filed by defendant one day before the scheduled trial date even though the scheduling conference was held approximately two months earlier. Since the trial date was confirmed without an objection by defendant, the defendant has thereby acquiesced in the trial date set. *Perry v. State* (1984), Ind., 471 N.E.2d 270; *Sumner v. State* (1983), Ind., 453 N.E.2d 203. Insofar as no timely objection was made by defendant to the trial date being scheduled beyond the seventy-day time limit, defendant's request for an early trial date is deemed waived and therefore defendant is not entitled to a discharge under Ind.R. Crim.P. 4(B)(1).

## II.

Defendant contends the trial court erred by failing to grant his request for instructions regarding his consent defense and mistake of fact defense.

While defendant admitted his presence in the victim's home on August 2, 1982, he argues that such presence was not based upon an illegal entry. Rather, defendant maintains that the victim had arranged for defendant to remove the victim's gun collection so that the victim could collect insurance. Therefore, defendant sought to have the trial court instruct the jury as to his consent defense with the following tendered instruction number three:

"The element of 'breaking and entering' as used in the definition of the offense of burglary means an illegal entry."

A second but related theory of defense espoused by defendant was that he mistakenly believed that he had the victim's consent because of representations made by the victim's son to defendant. The trial court also refused to instruct the jury on the following tendered mistake of fact instruction number four:

"The defense of mistake of fact is defined by law as follows:

"It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense.

"The reasonable mistake about a fact must have prevented the defendant from,

forming the intent to commit the offense of which he is charged (or) knowing that the offense charged was being committed (or) being reckless, (as defined by law), in his conduct.

"The State has the burden of disproving this defense beyond a reasonable doubt."

Consent to entry by the owner of the premises or by an authorized person constitutes a defense to a burglary charge under appropriate circumstances in several jurisdictions. 93 A.L.R.2d 531. This Court has implicitly found that the consent of the owner or other authorized person may negate the criminal intent requisite to a burglary charge. *Watkins v. State* (1984), Ind., 468 N.E.2d 1049; *Lamb v. State* (1984), Ind., 462 N.E.2d 1025; *Blow v. State* (1983), Ind., 445 N.E.2d 1369; *Howard v. State* (1982), Ind., 433 N.E.2d 753; *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841. While this Court has not expressly held consent to entry to be a valid defense to burglary in Indiana, we have found that where there is appropriate evidence to show owner consent, such an instruction may be proper. *Thompson v. State* (1862), 18 Ind. 386, 81 Am.Dec. 364.

In jurisdictions, such as Indiana, which retain the common law definition of burglary by requiring a breaking, there can be no breaking and therefore no burglary where the owner or other authorized person consents to entry, since a consensual entry is not an unlawful or illegal entry.

■ However, it is no defense to a burglary charge where defendant is given consent to enter by one having no authority to do so. In this case, defendant could not have reasonably believed that the adult, nonoccupant son had authority to consent to defendant's entering of the parents' residence for the purpose of stealing valuables which belonged to his parents. *State v. Tolley* (1976) 30 N.C.App. 213, 226 S.E.2d 672. Therefore, defendant did not have authorized consent to enter the victim's home.

■ Moreover, in jurisdictions which recognize consent to entry as a defense to burglary, consent may be limited in scope by the purpose of the consent. *See Annotation* 93 A.L.R.2d 531. In the present case, defendant's premise was consent to enter the victim's home for the limited purpose of taking the victim's guns, based upon an alleged insurance fraud scheme. However, the record shows that several articles were collected by defendant which were not guns. Therefore, even if defendant had authorized consent to enter the victim's home, defendant had exceeded the scope of such consent.

■ In any event, when determining whether an instruction has been properly refused, we must consider on review whether:

1. The tendered instruction correctly stated the law;

2. There was evidence in the record to support the giving of the instruction; and

3. The substance of the tendered instruction was covered by other instructions which were given.

*Van Orden v. State* (1984), Ind., 469 N.E.2d 1153; *Jackson v. State* (1984), Ind. App., 469 N.E.2d 753.

■ Defendant's tendered consent defense instruction does not present a statement of the law of consent to entry but rather appears to simply modify the breaking and entering element by the word "illegal." At best, this would have been a redundant instruction since all criminal offenses by definition are illegal. We there-fore hold that it was not error for the trial court to refuse defendant's tendered consent defense instruction since it did not correctly state the law.

■ Defendant also argues that the trial court erred by refusing his tendered mistake of fact defense instruction. For mistake of fact to be a valid defense, the following three elements must be satisfied:

1. The mistake must be honest and reasonable;

2. The mistake is about a matter of fact; and

3. The mistake serves to negate culpability.

*Stoner v. State* (1982), Ind., 442 N.E.2d 983.

■ Defendant's assertion that he had consent to take the guns and testimony by defendant's girlfriend that she overheard the victim's son tell defendant the same, is some evidence that defendant honestly believed that he had consent. It is not evidence, however, of the reasonableness of that belief. A reasonable person in defendant's position would not have believed consent to take the parent's belongings existed, particularly since the victim's son did not reside at the victim's home and since evidence indicated that there might be a strained relationship between the victim and his son. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836, 839. Assuming that defendant's mistake related to a matter of fact, the record indicates that his mistake of fact was not reasonable and did not serve to negate culpability. Therefore, there was no error in refusing defendant's tendered mistake of fact defense instruction.

### III.

Defendant next argues that the trial judge erred by presiding at the trial and during the sentencing hearing. The following two theories were presented by defendant:

1. The trial judge should have disqualified himself prior to trial due to an alleged conflict of interest between the judge and defendant; and

2. The trial judge erred by failing to grant defendant's motion for change of judge.

Both of defendant's arguments are based on the fact that at the time of trial a civil litigation was pending in federal court on behalf of this defendant wherein the trial judge was one of the named defendants.

■■■■■ The law presumes that a judge is unbiased and unprejudiced in the matters which come before the judge. A judge has the discretionary power to disqualify himself or herself *sua sponte* whenever any semblance of judicial bias or impropriety comes to the judge's attention. Additionally, where a judge has actual prejudice in a case, justice requires that a *sua sponte* judicial disqualification from the case be made. *Nelson v. State* (1982), Ind.App., 436 N.E.2d 1153. The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been so disqualified. *Jones v. State* (1981), Ind.App., 416 N.E.2d 880. However, defendant does not direct this Court to any specific instance in the record wherein actual prejudice of this trial judge is claimed to be demonstrated. Since there is no objective evidence of actual prejudice by this trial judge, we conclude that it was not necessary for this trial judge to disqualify himself *sua sponte* to ensure a fair trial and, therefore, there was no error.

Defendant next contends that he was denied a fair sentencing because the trial judge did not grant his motion for change of judge. During the sentencing hearing and immediately before the imposition of the sentence, defendant orally moved for a change of judge.

■■■■ An application for change of judge *must* be filed within ten days after a plea of not guilty or within five days after setting the case for trial. Ind.R.Crim.P. 12. In this case, the case was set for trial on August 23, 1982, with the trial scheduled to commence on October 19, 1982. However, defendant did not move for a change of judge until the sentencing hearing which was held on November 19, 1982. Obviously defendant did not satisfy the procedural requirements necessary for a timely change of judge motion. *Crowe v. State*, (1983) Ind.App., 456 N.E.2d 439.

■■■■ Even if defendant had alleged that he did not have cause to make a change of judge motion until the sentencing hearing, this rule requires a specific factual and explanatory statement for belated motions to be proper. Ind.R.Crim.P. 12. Since the motion did not state when the cause for motion was first discovered, how it was discovered, nor why it could not have been discovered before, defendant also failed to comply with this provision of the rule. *Hobson v. State* (1984), Ind., 471 N.E.2d 281.

## IV.

Defendant next argues that the trial court erred in admitting into evidence during the habitual offender proceedings state's exhibits 1, 3, 6, and 7. He first contends that exhibits 1 and 3, which are certified copies of court records, are inadmissible because a valid waiver of counsel was not shown on the face of the record.

State's exhibit 1 is a certified copy of a sentencing order on second degree burglary and recites, "defendant being in open court advises the Court that he does not have counsel to represent him herein and that he does not wish to have counsel nor to have counsel appointed by the Court to represent him herein." State's exhibit 3 is a certified copy of the minutes of arraignment and recites that "[t]he defendant advised the Court that he has consulted with his attorneys ... and that they have advised him as to all of his legal and constitutional rights and further advised him to enter a plea of guilty."

Citing *Burgett v. Texas* (1967), 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319, defendant maintains that since there is no valid waiv-

er of counsel on the face of the court records that these convictions should have been excluded from the evidence in the habitual offender proceedings, along with state's exhibits 6 and 7, which are prison records resulting from these allegedly uncounseled convictions.

Exhibit 1 indicates that defendant was aware of his right to representation by counsel. It is clear that a defendant may raise as a defense the asserted invalidity of those prior convictions if he can show that he was not adequately represented by counsel or knowingly and intelligently waived such representation at the time of the prior convictions. *Morgan v. State* (1982), Ind., 440 N.E.2d 1087; *Hall v. State* (1980) 273 Ind. 507, 405 N.E.2d 530. However, defendant has the burden of producing evidence in support of his defense that his prior convictions are invalid, which is consistent with where the burdens are placed when defendant directly attacks the validity of his conviction. *Hall,* 405 N.E.2d at 536.

As for State's exhibit 3, this exhibit recites that defendant had fully consulted with his counsel. Therefore, there is no merit to this argument.

Defendant next argues that state's exhibits 6, 7, 8, and 9, which are prison records resulting from prior convictions, should have been excluded based upon hearsay and the inclusion of photographs without a proper foundation.

Defendant first contends that the Department of Correction records are not encompassed within the official records hearsay exception because there was no evidence that the Department of Correction has a duty to maintain the records. There is no merit to this argument because Ind. Code § 34–1–17–7 (Burns 1979 Repl.) provides for the admission of public records when they are, as here, attested as true and complete records by the keeper of the records under the seal of his office. *Gilmore v. State* (1981) 275 Ind. 134, 415 N.E.2d 70. Certified copies of prison records are properly admissible as public

records and may be used to establish the fact of defendant's prior felony convictions. *Harmer v. State,* (1983) Ind., 455 N.E.2d 1139.

Finally, defendant maintains that the photographs enclosed in the prison record exhibits were improperly admitted because there was no foundation that the inmate photographs were a "true and accurate portrayal of that which it purports to portray."

Once again there is no merit to defendant's argument because prison records, including inmate photographs, are properly admitted exhibits where they are, as here, certified to be true and correct copies of the institution's records by the custodian of the records. *Thomas v. State* (1983), Ind., 443 N.E.2d 1197.

### V.

Defendant argues that the trial court erred in denying his motion to delete from state's exhibit 2 a reference to a previous habitual count. State's exhibit 2 is a criminal docket sheet regarding a 1965 burglary charge and habitual offender count against defendant and is certified by the court clerk. Even though this record also shows that the habitual offender count was dismissed by the prosecuting attorney, defendant maintains that reference to the habitual offender count should have been deleted and that it was prejudicial to keep this count in the docket sheet.

Assuming that denying defendant's motion to delete was error, we conclude that it was harmless error beyond a reasonable doubt because there was sufficient additional evidence to show defendant's convictions on two prior unrelated felonies.

### VI.

During the habitual phase the trial court erred, according to defendant, in admitting state's exhibit 10 because the exhibit contained an unexplained alteration on its face. Defendant contends that the state failed to explain this alteration thereby calling into

question the document's trustworthiness necessary to admit this exhibit.

State's exhibit 10 is a fingerprint card made at the time of defendant's arrest for the present offense and the claimed alteration is liquid correction (white-out) beneath the signature of the official who took the fingerprints.

Detective David Payne, keeper of the fingerprint files for the Sheriff's Department, testified about the fingerprinting procedures. After an officer fingerprints a person, the officer and the person sign the card and then the card is forwarded to Detective Payne for filing. Payne testified that the department often used correction fluid when mistakes had been made.

Defendant does not specifically state why the signature over white-out would constitute untrustworthiness, when the evidence indicates that the keeper of the records received the fingerprint card, in its present condition, directly from the officer who fingerprinted defendant. A mere possibility of tampering will not render evidence inadmissible. *Duncan v. State* (1980) 274 Ind. 144, 409 N.E.2d 597.

Defendant also maintains that the trial court erred in allowing Detective Payne to testify over defendant's hearsay objection. Detective Payne also testified as to the dates the fingerprints were taken, the charge, and the date of defendant's booking process. Defendant objected since Payne did not observe the processing of defendant at the jail and did not have personal knowledge of that processing.

In regard to the business records exception to the hearsay rule, the sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it. The sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of entry. *Belcher v. State* (1983), Ind., 453 N.E.2d 214. Officer Payne, as keeper of the records, so testified as to the business records requirements and as such it was not necessary that Payne observe or have personal knowledge of defendant's booking.

## VII.

Defendant also argues that the trial court erred in sentencing him because the sentence for each offense was based on the same conduct in violation of the prohibition against double jeopardy. The basis for defendant's double jeopardy argument is his contention that the crime of attempted theft, as charged, was a lesser included offense of the burglary offense, as charged.

The information for burglary of a dwelling alleged that defendant "did break and enter the building and structure" of the victim's home. According to the information on attempted theft, it was alleged that defendant did "knowingly and intentionally attempt to exert unauthorized control over [the victim's] property."

The crucial inquiry is whether the offenses are the same for the purposes of double jeopardy. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. To determine whether there are two offenses requires a determination as to whether each offense requires proof of an additional fact which the other does not. Double jeopardy analysis focuses on whether the offenses are the same and not whether the offenses arose from the same act or operative circumstances. *Elmore*, 382 N.E.2d at 897.

Based upon this analysis, we conclude that the offenses of burglary and attempted theft are not the same. This burglary was complete upon breaking and entering the victim's home with the intent to commit a felony therein. To obtain a conviction for burglary the state did not have to prove attempted theft. And, attempted theft did not require proof of breaking and entering in order to obtain a conviction. Hence, each offense, as charged, required proof of an additional

fact which the other did not. The two offenses are not the same and therefore the imposition of separate sentences for each offense was proper.

For all the foregoing reasons, this judgment is affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.