Jerry Lee STOUT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 783 S 259.

Supreme Court of Indiana.

July 1, 1985.

Terrance W. Richmond, Milan, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1985), and two counts of theft, a class D felony, Ind.Code § 35–43–4–2(a) (Burns 1985). He was sentenced to twenty (20) years imprisonment upon the burglary conviction and to four (4) years imprisonment on each of the theft convictions, said sentences to run consecutively. His direct appeal presents eight (8) issues which we have consolidated and renumbered as follows:

(1) Whether the trial court erred in giving State's tendered final instruction number 1;

(2) Whether the trial court erred in admitting State's exhibits 1, 2, 3, and 4, photographs depicting objects recovered from the home of Defendant's girlfriend;

(3) Whether the trial court erred in allowing Defendant's accomplice to testify as to other crimes in which the two had participated;

(4) Whether the trial court erred in admitting portions of State Witness McKee's testimony over Defendant's hearsay objection;

(5) Whether the trial court erred in failing to consider the two theft counts as one theft for the purpose of trial and sentencing;

(6) Whether the trial court erred in sentencing the Defendant to consecutive terms of imprisonment.

The record discloses that Defendant met Tucker, his accomplice, through Defendant's girlfriend, Serfine Stainbrook. In the two days prior to the charged crime, Defendant and Tucker committed several bur-

glaries. Defendant served as the driver while Tucker did the actual breaking and entering. On one occasion in this series Defendant did assist Tucker in removing a wood stove from one home and storing the stove in another location. On the night prior to the charged crime, Defendant and Tucker were in the Stainbrook home discussing ways to make money. Tucker suggested a place where they could steal guns and other items for possible sale. Defendant and Tucker agreed to take that action. They left for the victim's home the next day.

When they arrived, Tucker knocked a wooden window cover off a garage window and entered the garage. He then kicked in a service door from the garage to the home and together they searched the home and garage area. They took personal property including guns, a television, assorted frozen garden vegetables, frozen turkeys and a chain saw. Some of the items were taken from the home and some from the garage. They were all loaded into the victim's automobile which was parked in the garage. Tucker then drove the victim's automobile to the Stainbrook residence while Defendant followed in his own car. The pair unloaded the stolen property and placed most of it in the residence. Tucker then drove the victim's car to an isolated location and abandoned it. Defendant picked Tucker up at that location and brought him back to the Stainbrook residence.

The next day Defendant left in his car to sell the guns in Ohio. That same day the police came to the Stainbrook residence in an attempt to find Tucker. Stainbrook's sixteen year old daughter and Tucker were the only persons present at the residence when the police arrived. The police, without a warrant, but with the consent of the daughter, entered the residence and conducted a search. The police found Tucker hiding in a back bedroom. They then took him to the police station where he was advised of his rights and interrogated. He gave the police a statement which outlined his role in the burglaries and also implicated the Defendant. Based upon the information from Tucker the police obtained a search warrant for the Stainbrook home. Using that warrant, the police recovered the television, the frozen food and the turkeys.

About one week later, the police instituted a stake out at the home of one of Defendant's friends in hopes of effecting an arrest. Defendant saw the police from the home and surrendered.

## ISSUE I

Appellant claims that the trial court erred in giving State's Tendered Final Instruction Number 1 as follows:

"You are instructed that the flight of a person immediately after the commission of the crime with which he is charged is a circumstance which you may consider in connection with all the other evidence, to aid you in a determination of guilt or innocence."

This instruction was approved by this Court in *James v. State* (1976), 265 Ind. 384, 389, 354 N.E.2d 236, 240. Defendant maintains that there was no evidence to support the instruction. The record shows that, rather than attempting to flee, Defendant surrendered to the police. Thus, he argues, there was no evidence of flight to support the instruction. Defendant is correct, however, this Court must determine whether the giving of the instruction resulted in prejudicial error.

"It is well settled that errors in giving or refusing instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not have properly found otherwise." *Battle v. State* (1981), 275 Ind. 70, 77, 415 N.E.2d 39, 43. In the case at bar, an accomplice provided direct testimony linking Defendant with the crime. In addition ample physical evidence (which linked Defendant to the crime) was recovered and admitted into evidence. We hold that the instruction was not supported by the evidence, but that the giving of the instruction was harmless error in this case.

## ISSUE II

Defendant claims that the court erred in admitting photographs over his objection.

The photographs were of the items recovered from the Stainbrook residence. The police took photographs of the items so that the items could be returned to their owner. Defendant contends that the photographs were inadmissible as they were the product of an illegal search and thus were the "fruits of the poisonous tree."

Defendant argues that the first visit by the police to the Stainbrook residence, which resulted in the locating of Tucker, was a warrantless search which did not meet any of the known exceptions to the general rule requiring a warrant to conduct a search. The State argues that Defendant lacks standing to challenge the search as the property is owned by another, Ms. Stainbrook.

■ The United States Supreme Court in *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 established the test to be followed in reaching a determination of whether a non-owner may challenge the constitutional validity of a search. The test is the "legitimate expectation of privacy in the place searched" test. Whether an expectation of privacy exists is a fact question to be determined on a case by case basis.

In *Murrell v. State* (1981), Ind., 421 N.E.2d 638, 640–641, this Court focused on the control over the residence maintained by the owner and by the complaining non-owner appellant. The Court found the appellant's rights in the property were controlled by the owner. The appellant in *Murrell* had no key to the property nor did he have a room in the residence which he could use at his discretion. In a similar case the Court of Appeals found an appellant who did not have a key to the residence and who did not keep personal property at the residence had not demonstrated a legitimate expectation of privacy in the residence. *Lee v. State* (1981), Ind.App., 419 N.E.2d 825, 828–829.

In examining the record we find the following pertinent testimony.

"CROSS–EXAMINATION OF NANETTE STAINBROOK

"QUESTIONS BY RONALD L. DAVIS

"Q Miss Stainbrook, you're how old?

"A Seventeen.

"Q At the time all this took place did you live at that trailer?

"A Yes, I did.

"Q Who else lived there?

"A My Mom and my little brother and Jerry was living there.

"Q Okay, there a relationship between your mother and Mr. Stout?

"A They're going together.

"Q Going together. Living together?

"A Uh-huh."

This testimony is in contrast to that offered by the mother/owner/girlfriend.

"DIRECT EXAMINATION OF SERFINE STAINBROOK

"QUESTIONS BY RONALD L. DAVIS:

"Q Tell the jury your name please?

"A Serfine Stainbrook.

"Q And where do you reside?

"A Lot 61, Hickory Manor.

"Q All right, do you own that, is it a mobile home?

"A Yes, sir.

"Q Do you own it or rent it?

"A Own it.

"Q All right, does anyone else live there with you?

"A My children.

"Q Okay, directing your attention back to the month of November of 1981[,] more specifically the dates of November 20, 1981, was anyone living with you besides your children during that period of time?

"A What was the date again?

"Q November 20, 1981?

"A No not what you call living with me, no.

"Q Okay, was anyone staying there?

"A Yes.

"Q Who would that have been?

"A Jerry Stout.

"Q All right, Was he staying there on a regular basis?

"A No, sir.

"Q All right, how would you characterize it then?

"A Once in a while.

"Q Okay once in a while. Was Mr. Stout your boyfriend so to speak?

"A Yes, sir.

 From this testimony the trial court was justified in finding the evidence to be less than that required to establish a legitimate expectation of privacy. Defendant has the burden to show he has such an expectation. He has made no showing he had any degree of control over the residence or any part therein. The record reveals some conflict in testimony between the mother and daughter as to Defendant's residency in the Stainbrook home. However, the person in the best position to evaluate the reality of the arrangement, that is the mother/girlfriend, indicated the Defendant only stayed once in a while. A frequent guest has no legitimate expectation of privacy unless he produces other evidence to show that he maintains a degree of control over the residence. There is no such evidence in this case.

 In addition, Defendant argues that a proper foundation was not laid to establish the relevancy and materiality of the photographs. The victim identified the photographs as pictures of items similar to those taken from his home. Defendant's objection then and now is that the victim was not able to identify with certainty that the objects photographed were the items taken from his home. Defendant contends that the identification was based upon hearsay and conclusions beyond the personal knowledge of the witness. This Court has indicated that an item of physical evidence may be properly admitted despite the inability of a witness to speak with certainty that the object being admitted is the same as the object involved in the crime. The fact that certainty is absent goes to the weight of the evidence not the admissibility of the evidence. *Hooper v. State* (1983), Ind., 443 N.E.2d 822, 825; *Jordan v. State* (1982), Ind., 432 N.E.2d 9, 13–14.

 In the case at bar, as in *Hooper*, it was not until later in the trial that police testimony linked Defendant to the recovered items. In the case at bar the evidence was admitted prematurely; however, the error was harmless. *Hooper v. State*, 443 N.E.2d at 825.

## ISSUE III

 Defendant alleges that the trial court erred in admitting the testimony of the accomplice, Tucker, as to Defendant's participation in prior crimes when no factual basis was laid. Evidence of prior crimes or criminal acts other than the one charged is generally inadmissible. However, certain exceptions to the rule exist. Under one of these exceptions, evidence of prior criminal acts may be introduced to show common scheme or plan, intent, purpose or identity. *Hill v. State*, (1983), Ind., 445 N.E.2d 994, 995. In the case at bar such evidence was introduced by the testimony of Tucker. We hold that the testimony in this case was admissible under the rationale in *Foresta v. State* (1980), 274 Ind. 658, 660, 413 N.E.2d 889, 891.

## ISSUE IV

 Defendant next asserts that the trial court erred in admitting portions of the testimony of Officer McKee. He argues that the testimony was based upon hearsay and speculation beyond the personal knowledge of the officer. In his testimony the officer explained that he had received information from certain parties and that he had taken certain action based upon the information so received.

We have upheld the trial court's admission of police testimony which, although containing statements from third parties, had as its purpose the explanation of why the officer took a particular course of action. We have held that this testimony was not hearsay as its purpose was not to establish the truth of the statements made by third persons but rather to show why an officer took a particular course of action instead of another. *See McNew v. State* (1979), 271 Ind. 214, 215–217, 391 N.E.2d

607, 610; *Morris v. State* (1980), 273 Ind. 614, 616–617, 406 N.E.2d 1187, 1189–1190; *Roberts v. State* (1978), 268 Ind. 348, 353–354, 375 N.E.2d 215, 219.

In the case at bar, the two facts which Defendant claims were asserted by the testimony were shown by other testimony. Tucker testified concerning the whereabouts of the men on the days prior to the crime and to how they reached the victim's home. In light of the duplication of the testimony and our prior holdings in similar cases, we hold that the trial court did not err in admitting the questioned testimony.

## ISSUE V

■ Defendant alleges that the trial court erred in failing to consider the two theft counts as one theft for the purpose of trial and sentencing. In Count II of the information Defendant was charged with exerting unauthorized control over a television set, a chain saw, and five guns with the intent to deprive the victim of their use and value. In Count III of the information, Defendant was charged with exerting unauthorized control over the victim's automobile with the intent to deprive him of its use and value. Each count charged Defendant with violating Ind.Code § 35–43–4–2(a). Defendant argues that there was but one theft, i.e. a single offense. We agree.

In *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, we held that in determining whether a defendant may be convicted and sentenced for multiple offenses arising from the same act or acts, the proper focus is on whether "the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances.... The ultimate focus is on the identity of the offenses, not on the identity of their source." *Id.* at 539, 382 N.E.2d at 897. The facts in the case at bar reveal that the items listed in Count II of the information were taken from the victim's home, while the automobile was taken from his garage. This, however, cannot be sufficient reason for finding that two separate offenses occurred. A garage is a part of one's home.

*Gaunt v. State* (1983), Ind., 457 N.E.2d 211, 214. The only other factor distinguishing the two counts of theft is the property over which Defendant is charged with having exerted unauthorized control.

"[A]n information in but one count may charge the theft of any one or more of the articles taken at one time and from one place. The failure, however, to describe all of the articles so taken in one count does not permit the prosecution to secure additional judgments and and sentences of theft, for the articles omitted in the single count, in either the same or a subsequent prosecution. That is, the State cannot split up a single offense and make distinct parts of that single offense (e.g., each article of property taken) the basis for separate or multiple prosecutions.... If only one offense is committed, there may be but one judgment and sentence."

*Holt v. State* (1978), 178 Ind.App. 631, 638, 383 N.E.2d 467, 472.

We hold that the Defendant exerted unauthorized control over several items of personal property, including an automobile, all of which were taken at the same time from the victim's home. This constituted but one offense in violation of a single statute.

## ISSUE VI

■ Defendant argues that the trial court erred in imposing consecutive sentences. Trial sentencing is governed by I.C. § 35–50–1–1 (Burns 1979). At the time of sentencing, Defendant was on probation from Jackson County following the suspension of a one year sentence to the Indiana State Farm.

Judge Lowdermilk, writing for the Court of Appeals, discussed this issue in *Perry v. State* (1978), 177 Ind.App. 334, 340, 379 N.E.2d 531, 534. He held that the trial court had discretionary authority to determine whether the instant sentences should be served concurrently or consecutively.

In *Taylor v. State* (1982), Ind., 442 N.E.2d 1087, this Court said:

"Taken together these cases indicate the trial court's discretion in determining whether terms of imprisonment are to run concurrently or consecutively is not without limits. At the very least the judge must be able to articulate facts in the case that support a finding of the presence of at least one of the aggravating circumstances listed in I.C. § 35–50–1A–7 [Burns 1979 Repl.] before consecutive terms of imprisonment may be imposed." *Id.* at 1092

The trial court in its sentencing statement called attention to Defendant's past criminal record and the fact that the crime was committed while Defendant was on probation. The trial court was well within its discretionary authority. There was no error in imposing consecutive sentences.

This cause is remanded to the trial court with instructions to vacate the judgment and sentence on Count III. In all other respects, the judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, J., concur.

PIVARNIK, J., concurs and dissents.

HUNTER, J., not participating.