Jamie Cliffton WISEMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8608–CR–755.

Supreme Court of Indiana.

April 12, 1988.

Rehearing Denied June 19, 1988.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal, following a trial by jury, of seven theft convictions and seven forgery convictions. Appellant was sentenced to two years for each theft conviction, to run consecutively, and to five years for each forgery conviction, to run consecutive to each other and concurrent with the theft convictions.

■ It must first be noted that this appeal does not meet the prerequisite jurisdictional requirements of Ind.R.App.Proc., Rule 4(A)(7). No single sentence in this case carries a minimum sentence greater than ten years. *Menefee v. State* (1981), 275 Ind. 390, 417 N.E.2d 302. Since the case was inadvertently filed in this court, without objection by the State, we exercise our inherent judicial authority to retain jurisdiction of this case and thereby render a decision on the merits. *Neice v. State* (1981), Ind., 421 N.E.2d 1109.

There are six issues presented for review: (1) whether the trial court erred in admitting State's exhibit 18; (2) whether the trial court erred in admitting State's exhibit 26; (3) whether there was sufficient evidence presented to support the convictions; (4) whether the trial court erred by sentencing appellant for seven separate thefts and seven separate forgeries; (5) whether the total sentence imposed constitutes cruel and unusual punishment; and (6) whether the trial court erred by failing to discharge appellant when more than seventy days elapsed from the date of the speedy trial request.

These are the facts from the record which tend to support the determination of guilt: Appellant worked for a janitorial service. He was assigned to clean in the Marion County Clerk's office during the hours the office was closed. He worked in the clerk's office on July 24, 1985, the night before seven checks were discovered missing from the office. Those checks, drawn on Merchant's National Bank and made to local attorneys, were deposited into the account of Dr. Jamie Wiseman at Union Federal Bank on July 25, 1985. The bank teller who performed the transaction identified appellant as the individual who made the deposit. She testified he identified himself as Dr. Jamie Wiseman, produced an identification card indicating such, and explained that he worked in a psychiatric hospital and that he was depositing these checks on behalf of his patients. The endorsements on the checks were forgeries. A handwriting expert testified that the forged endorsements were in appellant's handwriting. Prior to discovery of the stolen nature of the checks deposited, Union Federal Bank cashed seven personal checks drawn on the account of Dr. Jamie Wiseman and made out to Dr. Jamie Wiseman. The checks were negotiated between July 27 and July 30, in various amounts and at various bank branches. The handwriting appearing on those checks was determined to be that of appellant. One of the bank tellers identified appellant as the individual who had negotiated a personal check drawn

on the account and made payable to Dr. Jamie Wiseman.

## I.

■ State's exhibit 18 is appellant's time card from the janitorial service where he worked. Across the top of the card there are blank lines designated in print for "name" and "pay ending". On the one appellant's name is written and on the other a date "7–26–85" is written. Beneath this upper area containing general information there are five vertical columns showing the hours worked on the five days of the month, from the 21st to the 25th. In each column the times clocked in and clocked out are recorded. The "26" in the date on the pay-ending line is obviously written on top of typewriter correction fluid. Appellant contends that the failure of the prosecution to supply testimony concerning the facts surrounding this alteration rendered the exhibit inadmissible under the business records exception to the hearsay rule.

The business records exception to the hearsay rule has four requirements:

(1) The records offered must have been the original entries or a duplicate copy of same.

(2) The records must have been made in the regular course of business at or near the time of the event recorded.

(3) The facts must have been within the first hand knowledge of someone whose business duty it was to observe and report the facts.

(4) The witness who had knowledge of the facts must be unavailable, or unable to recall the facts so as to testify from memory.

*Wells v. State* (1970), 254 Ind. 608, 261 N.E.2d 865. Appellant's legal claim is that there is a lack of evidence that the alteration of the number "26" occurred in the regular course of business as required by element (2) above.

Appellant's supervisor testified that he and his secretary were in charge of keeping the records of the time cards. The time cards would be gathered up at the end of the week, the pay ending date put on them by the secretary for her purposes, the payroll would be made out by the witness, and the cards sent to the home office. The witness stated further that it was normal procedure for corrections on time cards to be made by the secretary in this manner, and that one would find quite a few of them. This was a sufficient showing to support the admission of the time card.

## II.

■ The State was successful in gaining admission into evidence it's Exhibit 26, which was a signed and notorized affidavit by the keeper of the records of the Medical Licensing Board of Indiana. The affidavit was to the effect that there was no record of appellant being licensed to practice medicine in the State of Indiana. Appellant objected to the admission of the affidavit, arguing that it was impermissible hearsay as it was offered to prove the truth of the matter asserted and that the maker was not available and not subject to cross examination. The trial court ruled that the exhibit was admissible, relying on I.C. 34–3–17–1, which determines the admission of public records, or the lack thereof, in civil proceedings. However, I.C. 34–3–17–3 specifically provides that the statute is inapplicable in "any criminal proceedings whatsoever." *Id.* Therefore, reliance on that statute was erroneous. However, Trial Rule 44(B) of the Indiana Rules of Trial Procedure also deals with the introduction into evidence of official records, or the lack thereof, and does apply to criminal cases. It provides that a written statement by one with custody of official records, attesting that a diligent search of the records was made and that no record or entry such as that requested exists, is admissible to prove the lack of existence of that record. *See Johnson v. State* (1971), 256 Ind. 497, 269 N.E.2d 879; *Worsley v. State* (1974), 162 Ind.App. 34, 317 N.E.2d 908. The notorized statement of the custodian of the records of the Medical Licensing Board was sufficient to satisfy this rule and consequently the trial court did not err in admitting exhibit 26.

■ Further, while arguing error in admission, appellant does not assert prejudice as a result of the admission. Error by the trial court in ruling on the admission of evidence will be deemed harmless absent proof that the admission in some way harmed or prejudiced the defendant. *Bradford v. State* (1983), Ind., 453 N.E.2d 250; *Yager v. State* (1982), Ind., 437 N.E.2d 454. Proof that appellant was not licensed to practice medicine in Indiana is not dispositive of whether or not he is entitled to use the title "doctor". A person with a law degree is a "doctor", as is the holder of a Ph.D. Appellant could be licensed to practice medicine in another state or could be a "doctor of divinity". Whether of not the use of the title "doctor" was authorized in some manner was totally extraneous to the issue of guilt or innocence.

### III.

Appellant contends that there was insufficient evidence presented to support the convictions. Specifically, he urges that the State's case rested entirely on circumstantial evidence, contained no eyewitness testimony concerning the thefts, and only established a mere suspicion of guilt.

■ Appellant was charged with uttering forged instruments. Six of the stolen checks were made payable to Rubin and Levin. The seventh was made payable to William Thompson. Evidence was presented that the endorsements on the checks were unauthorized and were not the signatures of the parties entitled to the funds. Eyewitness testimony, namely that of the bank teller who assisted in the transaction, identified appellant as the person who presented the stolen checks for deposit into the account of Dr. Jamie Wiseman and who identified himself as Dr. Jamie Wiseman. A handwriting expert testified that appellant was the party who signed the endorsements, thus reflecting that at the time of uttering appellant had the intent to deprive. This was sufficient evidence from which the jury could determine, beyond a reasonable doubt, that appellant committed the offense of forgery, in that he uttered a forged instrument.

■ Appellant was charged with seven counts of theft. A handwriting expert testified that the seven checks drawn on the account of Dr. Jamie Wiseman, and made payable to Dr. Jamie Wiseman, were executed by appellant. Further, a bank teller positively identified appellant as the person who presented one of the checks for payment and who identified himself as the Dr. Jamie Wiseman on whose account the checks were drawn. Appellant was charged with theft of United States currency from the bank in that he exerted unauthorized control over the property of the bank with intent to deprive the bank of its value and use. The evidence that appellant was the person who stole the checks from the clerk's office and the person who forged the endorsements was sufficient to support a finding that appellant intended to deprive the bank of the money. "Unauthorized" control is defined in part as "creating or confirming a false impression in the other person". Appellant created and confirmed the false impression that he was entitled to the funds he deposited in his account when in reality he stole the checks. There was sufficient evidence presented to show that appellant was the person who made the checks payable to Dr. Jamie Wiseman and that he was the person who in fact received the funds. It was also shown that the control exerted by appellant over the funds was unauthorized and done with the intent to deprive the bank of the use and value of the money.

### IV.

Appellant urges that his prosecution and sentencing for seven separate counts of forgery and seven separate counts of theft was error. He suggests that all of the forgery counts arose from a single transaction inspired by a single criminal intent and that all of the theft counts also arose from but a single incident.

"In *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, we held that in determining whether a defendant may be convicted and sentenced for multiple offenses arising from the same act or acts, the proper focus is on whether 'the offenses

to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances.... The ultimate focus is on the identity of the offenses, not on the identity of their source.' *Id.* at 539, 382 N.E.2d at 897".

*Stout v. State* (1985), Ind., 479 N.E.2d 563.

When faced with a defendant charged and convicted of two counts of theft, one count alleging theft of items from the inside of a house and the other alleging theft of an automobile from the garage, this court determined that but a single offense, i.e. a single theft, occurred. *Id.* Single offenses may not be split up based upon each item involved in order to support multiple prosecutions. *Id. See also Holt v. State* (1978), 178 Ind.App. 631, 383 N.E.2d 467. In *Raines v. State* (1987), Ind., 514 N.E.2d 298, we held that the theft of a truck and scuba diving equipment, which was either removed from the residence or already in the truck, though separately charged, constituted one offense from which there could be only one judgment and one sentence.

■ Each information for forgery charged that appellant, on July 25, 1985, unlawfully and with intent to defraud, uttered to Union Federal Bank a forged check. The seven stolen checks were all presented to the bank at the same time, on the same date, to the same person, and were all listed on one deposit slip. The conduct of appellant in uttering these seven checks, i.e., presenting them simultaneously to the bank, supports but a single count of forgery. Appellant was erroneously subjected to forgery convictions on multiple counts.

■ The informations for theft charged that on certain dates, with intent to defraud, appellant exerted unauthorized control over cash belonging to Union Federal Savings Bank with the intent to deprive the bank of its use. The theft alleged in Count 8 occurred on July 27, 1985. It involved a counter check for $50.00 and was cashed at the Allisonville branch at 2:00 p.m.. The theft alleged in Count 9 occurred on July 27, 1985. The amount of money and the bank branch were the same but the transaction occurred at 4:00 p.m.. The theft alleged in Count 10 occurred at 11:00 a.m. on July 29, 1985 at the main branch and involved $75.00. Count 11 occurred at 12:30 p.m. on July 29, 1985 at the Irvington branch and the check was for $105.00. Count 12 happened on July 29, 1985 at 1:00 p.m. at the Broadripple branch and the check was for $2,000.00. Counts 13 and 14 occurred on July 29, 1985 at 3:00 p.m. and July 30, 1985 at 9:00 a.m. respectively. They occurred at the main branch and the checks were for $3,000.00 and $1,000.00. The seven thefts for which appellant was charged and convicted were clearly separate crimes. They occurred at different times, at various bank branches, involved separate checks, and occurred on various days. He was properly sentenced for seven separate theft convictions.

## V.

Appellant contends that the imposition of a thirty-five year total sentence violated the constitutional provision against cruel and unusual punishment. As a result of our determination that appellant could only be properly convicted of one count of forgery, the total sentence he now faces is fourteen years. Therefore, we will not address whether the original sentence was manifestly unreasonable.

## VI.

■ An oral motion for a speedy trial was made on August 5, 1985 and trial was rescheduled for October 7, 1985. On October 2, 1985, at the pre-trial conference, the State moved for a continuance, which was granted, and the trial date was reset for October 21, 1985. Appellant did not object at the pretrial conference to the continuance of the trial date beyond the seventy day period. Not until October 18, 1985, three days before trial, did appellant object by filing a motion for discharge pursuant to Ind.R.Cr.P., Rule 4(B)(1). Appellant asserts that dismissal of the charges was mandated by the State's failure to try him within the statutorily provided time period.

When a trial date is scheduled beyond the limits prescribed by Ind.R.Cr.P., Rule 4(B)(1), a defendant must object at the earliest opportunity in order to preserve the issue for review. *Smith v. State* (1985), Ind., 477 N.E.2d 857. The case was continued upon motion by the prosecutor at the pretrial conference and the record does not reflect any objection by appellant to the continuance past the seventy day time period. His silence can only be interpreted to indicate acquiescence in the setting of the later trial date. *Id.*

The case is remanded to the trial court for resentencing to reflect conviction of just one count of forgery. In all other matters the trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents with separate opinion in which PIVARNIK, J., concurs.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case in the decision to remand to the trial court for re-sentencing to reflect conviction of just one count of forgery.

To commit forgery, one must make or utter a written instrument with the intent to defraud so that it purports to have been made by another person at another time with different provisions or by authority of one who did not give authority. Ind.Code § 35–43–5–2.

In appellant's case, the State established the facts which proved that appellant had uttered each of seven forged checks. When separate and distinct offenses occur, even when they are similar acts done at the same time, they are charged individually as separate and distinct criminal conduct. *Brown v. State* (1984), Ind., 459 N.E.2d 376.

In the case at bar, appellant acted with more than a single intent and design when he uttered the seven checks. He was properly convicted of seven counts of forgery. *See Graham v. State* (1982), Ind., 435 N.E.

2d 560; *McMahan v. State* (1978), 269 Ind. 566, 382 N.E.2d 154.

I would hold that the trial court was correct in sentencing appellant for seven separate forgeries.

PIVARNIK, J., concurs.