Dennis BROWN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8803–CR–316.

Supreme Court of Indiana.

Nov. 29, 1989.

*was* a way by which Tri–County attempted to make its right of way safe.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane A. Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

A jury trial resulted in a conviction of appellant of two counts of Murder, for which he received sentences of forty (40) years on each count, the second count enhanced by twenty (20) years for aggravating circumstances and ordered to run consecutively to Count I. He also was found guilty of Burglary, a Class B felony, for which he received a sentence of ten (10) years. He was found guilty of two counts of Theft, as a Class D felony, for which he received sentences of two (2) years each; Auto Theft, a Class D felony, for which he received a sentence of two (2) years; and Carrying a Handgun Without a License, a Class A misdemeanor, for which he received a one (1) year sentence, all sentences to run concurrently except the two murder counts.

The facts are: Charles Hoskinson, one of the victims in this case, rented an apartment on East University Avenue in Indianapolis. Thomas Felts, the other victim in this case, lived with Hoskinson. In June of 1986, Hoskinson allowed appellant to move in with them because he did not have a place to stay and was working for Hoskinson in his window cleaning business.

On July 6, 1986, Hoskinson drove to his mother's home in Edinburgh to mow the yard and do other odd jobs. He took appellant with him. While they were there, appellant told Hoskinson's mother that he wanted to kill Felts and that he knew where her son kept his gun. Hoskinson's mother later testified that she thought appellant was merely "blowing off steam" and did not mention the conversation to her son.

At approximately 6:30 a.m. on July 7, 1986, according to appellant's statements and testimony, Hoskinson confronted him as to why he had not cleaned a Kool Aid stain from the carpet. Appellant claims he replied that Felts had made the stain and should clean it up. This led to a heated exchange between Felts and appellant. Appellant stated that Felts approached him with a knife, that he kicked Felts in the groin causing him to drop the knife, and that while Felts was bent over he picked up the knife and stabbed Felts in the back. However, there also is circumstantial evidence in this record that Felts in fact was asleep on the couch at the time he was stabbed in the back.

Appellant claims that just as he was stabbing Felts, Hoskinson entered the room, saw what was happening, and tried to reach a gun lying on his desk. Appellant contends he beat Hoskinson to the gun, and in attempting to defend himself, he fired the shot that killed Hoskinson. He claims he noticed then that Felts was still alive and was attempting to get up, and so he returned to Felts and shot him in the back of the head. There also was evidence in this record from which the jury could conclude that Hoskinson in fact was attempting to flee from the room at the time he was shot in the back of the head by appellant.

Appellant then left the apartment and walked to the home of his friend, Teresa McCartney. He told her that he had killed the two men in self-defense and asked her if she knew anyone who would buy some "hot" items. McCartney gave appellant a shirt and he left.

He testified that he went to Ellenberger Park and sat for a while. He then returned to the apartment, went through Hoskinson's and Felts' pockets, and removed from the premises a typewriter, a copy machine, video equipment, a television set, a toaster oven, and an answering ma-

841

chine and loaded them into Hoskinson's Cadillac. He drove to a pool hall where he arranged to sell the gun and the typewriter for $125. He sold the television set and toaster for $50, the answering machine for $25, then returned to the apartment where he obtained a recliner which he loaded in Hoskinson's van and delivered to a buyer from whom he received $50.

At approximately 5:30 that evening, he drove the Cadillac to the home of his girlfriend, Pam Matthews. Pam and her sister Shirley got into the car and appellant drove to McCarty Park. At the park, he told the women that he had killed Hoskinson and Felts, then he displayed the money he had taken from their bodies. Shirley asked appellant if he had wiped off his fingerprints in the apartment, and he said that he had not. Pam then returned home to pack her belongings to leave with appellant.

Appellant and Shirley drove to a supermarket to purchase gloves and rubbing alcohol, then returned to the apartment where appellant entered by climbing onto the roof and entering through a bathroom window. He then unlocked the doors and allowed Shirley to enter. She stated that the smell of the decomposing bodies overcame her, and she returned to the car. However, appellant stayed in the apartment for approximately thirty minutes and returned to the car with a pillowcase containing three wooden boxes and a telephone.

They went to a mall and purchased clothing for both of them and for Pam. They then returned to the home where Pam was waiting with a packed suitcase. Appellant and Pam drove to a motel where they spent the night. The following day they drove to South Carolina to the home of Pam's brother Jeff, where they stayed a few days. At Jeff's suggestion, they drove to the home of his girlfriend, Cynthia Mitchell, in Florida.

In the meantime, the bodies of the victims had been discovered and police had put out a bulletin describing the missing Cadillac. Police in Daytona Beach, Florida arrested appellant while he was driving the Cadillac. Indianapolis police were notified and went to Florida to return appellant to Indianapolis. While still in Florida, appellant made the first of several statements concerning the crime. In his statements, he maintained that he had killed in self-defense. Appellant's testimony at trial was essentially the same as his statements made to police.

■ Appellant claims his convictions for murder are not sustained by sufficient evidence. He argues that the State did not present sufficient evidence to overcome his claim of self-defense. Although it is true that once appellant asserts a claim of self-defense, the State bears the burden of proving beyond a reasonable doubt the absence of the elements of self-defense, the State may satisfy such burden by specific rebuttal evidence or by relying upon its evidence in chief. *Lilly v. State* (1987), Ind., 506 N.E.2d 23.

Even though appellant's pretrial statements and his testimony during the trial steadfastly held to his claim that a fight started at the instigation of the victims and that he killed them in self-defense, the jury nevertheless had circumstantial evidence before it that Felts was stabbed while sleeping on a couch and Hoskinson was shot in the back of the head while fleeing the room. By appellant's own statement, he first stabbed Felts then shot Hoskinson, and then returned to Felts when it became apparent he was still alive and deliberately shot him in the back of the head.

In addition, the jury had before it evidence that appellant made no attempt to notify authorities and that he stole various items from the apartment, sold them, and returned to the apartment for additional property. He finally returned to the apartment with Shirley Matthews after such a time that the bodies had begun to decompose. The jury was entitled to conclude from this evidence that appellant's callous attitude toward his acts demonstrated that he had deliberately murdered the victims for profit.

The jury had the further evidence that appellant had fled the State to avoid prosecution, which they were entitled to consider as evidence of guilty knowledge. *Kiper v.*

*State* (1983), Ind., 445 N.E.2d 1353. There is ample evidence in this record from which the jury could disbelieve appellant's claim of self-defense and find that he in fact was guilty of murder. This Court will not attempt to reweigh that evidence. *See Ellis v. State* (1987), Ind., 508 N.E.2d 790.

■ Appellant contends the trial court erred in convicting him of both theft and automobile theft from the person of Charles Hoskinson. Appellant claims that the taking of Hoskinson's personal property and the taking of his automobile constituted a single offense. He cites *Stout v. State* (1985), Ind., 479 N.E.2d 563.

However, the *Stout* case is distinguishable from the facts in the case at bar. In *Stout*, the defendant had broken into the victim's home where he stole certain personal items and then removed the victim's automobile from the attached garage and used it to transport the stolen personal property from the scene of the crime. This Court held that there was a single burglary and theft and that the automobile was included within the goods stolen. Therefore, there should not have been a separate conviction of the theft of the automobile.

However, in the case at bar, after killing the victims, appellant stole personal goods from both of them and then stole Hoskinson's automobile. At that juncture, one might argue a parallel between this and the *Stout* cases. However, appellant subsequently returned to the scene of his crime on two separate occasions and in each instance stole goods belonging to his victims.

The evidence in this case thus clearly demonstrates that appellant not only committed theft of personal goods at the approximate time he committed the theft of the automobile, but he also returned and committed separate thefts on later occasions. This Court has previously held that when the two offenses are not the same or are committed separately, the defendant may be separately charged and separately sentenced for each offense. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893; *Raines v. State* (1987), Ind., 514 N.E.2d 298. The evidence in the case at bar clearly demonstrates that appellant committed the theft of personal goods belonging to Hoskinson after he had stolen Hoskinson's automobile. The trial court did not err in passing sentence on both convictions.

■ Appellant contends his conviction for burglary is contrary to law. He takes the position that he was living in the apartment with Hoskinson's permission. It is true that at the time the two victims were killed, appellant appears to have been in the home at Hoskinson's invitation. However, following the death of the victims, appellant left the apartment and later returned for the express purpose of stealing more property. To accomplish this, he broke and entered the premises. The jury was correct in finding that such reentry constituted burglary.

It cannot be said that Hoskinson's original consent for appellant to enter his apartment can be extended to a consent to subsequently enter the apartment by breaking and entering with intent to commit theft. *See Smith v. State* (1985), Ind., 477 N.E.2d 857. The trial court did not err in convicting appellant of the crime of burglary.

■ During the trial, appellant made a request that the proceedings be televised, which was denied by the trial court. In his brief, appellant concedes that he has been unable to find authority to support his position. He concedes that Canon 3(A)(7) of the *Indiana Code of Judicial Conduct* requires a trial judge to prohibit any broadcasting, televising, recording, or taking of photographs during a trial. The trial court would have violated the Code of Judicial Conduct had he sustained appellant's motion in this regard. Appellant's counsel is correct in his observation that no reversible error occurred here.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.