**John STUDY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9202–CR–76.**

Court of Appeals of Indiana,
Second District.

Nov. 19, 1992.

Rehearing Denied Jan. 14, 1993.

---

William F. Thoms, Jr., Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

John Study appeals his convictions of two counts of theft[1] and two counts of violation of the Indiana Loan Broker Act,[2] all class D felonies.

We affirm in part and reverse and remand in part.[3]

## ISSUE

Study raises five issues for our review which we combine and rephrase as:

1. Whether sufficient evidence exists to support Study's convictions of theft and violation of the Act.

2. Whether the trial court's failure to give instructions on a lesser included offense and an instruction reciting the statutory definition of "knowingly" constitutes reversible error.

3. Whether Study's sentences for two counts of theft and two counts of violation of the Indiana Loan Broker Act violates double jeopardy protection against multiple punishments for the same offense.

1. *See* IC 35–43–4–2 (1988).

2. *See* IC 23–2–5–4 (1988) and IC 23–2–5–16 (1988).

3. We note at the outset that Study's lengthy statement of facts does not follow a narrative format as required by Ind.Appellate Rule 8.3(A)(5), rather it consisted of a detailed description of each witness's trial testimony. This court has stated repeatedly that our appellate rules contemplate a narrative statement of facts,

## FACTS

Patrick and Beth Ann Aasen (the Aasens) wanted to open a restaurant, but lacked the financial means to do so. Through Beth Aasen's mother, they met John Study who told them he could help them start their business.

Study represented himself as an employee and resident agent of Monarch Corporation and he told the Aasens that Monarch would help them secure loans and provide cash flow assistance when their restaurant opened. Study asked the Aasens for $10,000 which he would use to purchase certificates of deposit (CDs). He would hold the CDs as good faith money and collateral for loans.

On April 18, 1990, the Aasens gave Study a cashier's check for $3000 with which he was to purchase CDs. On May 3, 1990, the Aasens delivered a second $3000 check to Study, expecting that he would purchase additional CDs. Study gave the Aasens a receipt for the two checks which stated: "Funds received are on deposit for six months reviewable terms to be held as collateral for loans, to be paid off by last certificate of deposit in reverse. Receipt of deposit to be in a declaration of trust." Record at 164. Study did not purchase any CDs; instead, he deposited one check into his personal bank account and cashed the other.

During this time, the Aasens kept in contact with Study, asking for references and inquiring about the CDs and corporate papers which he had promised them. Study put off their inquiries, assuring them their money was safe and the papers were being prepared. After a time, the Aasens consulted an attorney who met with Study and advised the Aasens to retrieve their

and a summary of witness testimony is not a statement of facts within the meaning of A.R. 8.3(A)(5). *See, e.g., Hoover v. State* (1991), Ind. App., 582 N.E.2d 403, 405. A statement of facts should be a concise narrative of the facts stated in the light most favorable to the judgment. *Nehi Beverage Co., Inc. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 82. Despite Study's failure to comply with the Appellate Rules of Procedure and the holdings of this court, we address the merits of the issues before us.

money. Study repeatedly promised to repay them but never did.

An official search by the Securities Division of the Secretary of State failed to reveal a brokering license for Study or any of the Monarch companies named by him.

Study was charged with two counts of theft and two counts of violation of the Indiana Loan Broker's Act (Act). He was tried by a jury and found guilty on all counts. Study was sentenced to three years each on counts I and II, to run concurrently, and three years each for count III and IV, to run concurrently and consecutively with the sentence for counts I and II. Study appeals.

## DISCUSSION

### I.

Study contends the evidence is insufficient to support his convictions of theft and of violation of the Act. We do not agree.

■ In reviewing a challenge to the sufficiency of the evidence, this court neither reweighs the evidence nor judges witness credibility. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242. We shall affirm a conviction if, considering the evidence which supports the verdict and all reasonable inferences from it, there is substantial evidence of probative value to support the conclusions of the fact finder. *Id.; Ford v. State* (1990), Ind., 555 N.E.2d 829, 833.

### A.

■ Study contends the evidence is insufficient to support his convictions of theft. Study argues that the evidence is insufficient because the State did not prove that he exerted unauthorized control over the Aasens' property under I.C. 35–43–4–1–(b)(6), that is by promising performance that he knew would not be performed. However, Study was charged generally with exercising unauthorized control over the property of another with the intent to deprive the other of the benefit of the property. Therefore, the State was not required to prove the offense as defined under any particular subpart of I.C. 35–43–4–1(b). *See Miller v. State* (1989), Ind.

App., 535 N.E.2d 170, 171, (The essential element of theft is that the control exercised by the accused is unauthorized, and any specification in the charge of a particular subparagraph under I.C. 35–43–4–1(b) is "mere surplusage[,].".). Therefore, the State's failure to prove "unauthorized control" under I.C. 35–43–4–1(b)(6) is not fatal to Study's conviction as long as there is sufficient evidence to support Study's "unauthorized control" under any subpart of I.C. 35–43–4–1(b).

■ Study also maintains that there were serious conflicts in the evidence: Study explained to the Aasens that he needed $10,000 before he started working for them, he spent up to 150 hours showing the Aasens what needed to be done in order to get their business started, and the money he received was his consultant's fee and not to be used to purchase CDs or as loan collateral. Study also contends that the Aasens approached him for help in starting their business. By asserting these facts, many of which come from his own testimony, Study is asking us to reweigh the evidence and judge the credibility of witnesses, which we will not do.

The evidence is sufficient to support Study's convictions of theft. IC 35–43–4–2(a) (1988) states that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." " 'Exert[s] control over property' means to obtain," IC 35–43–4–1(a) (1992 Supp.), and "a person's control over property of another person is 'unauthorized' if it is exerted ... (2) in a manner or to an extent other than to which the other person has consented." IC 35–43–4–1(b)(2) (1992 Supp.).

Study asked for $10,000 from the Aasens and received $6000 in two $3000 installments. He gave the Aasens a receipt for their two checks which stated that the funds received were to be used to purchase CDs and held as good faith money and collateral for loans. Study deposited one check in his personal bank account and

cashed the other. He also promised to draw up and deliver corporate papers. The promises were never fulfilled, and when the Aasens asked Study to return their $6000 he made various excuses and never did so.

A reasonable fact finder could conclude from this evidence that Study knowingly exerted control over the Aasens' property when, rather than purchasing a CD or CDs, he deposited one of the Aasens' checks into his personal bank account and then, again knowingly exerted control over the Aasens' property when he cashed the second check.

### B.

██ Study also contends that the evidence is insufficient to support his convictions of violating the Indiana Loan Broker's Act. IC 23–2–5–4 (1988) requires that "[a]ny person desiring to engage or continue in business of loan brokering shall apply to the commissioner for registration under this chapter," while IC 23–2–5–16 (1988) provides, "[a] person who knowingly violates this chapter commits a Class D felony." Thus, a violation of the Act consists of "(1) knowingly, (2) engaging or continuing in the business of loan brokering, (3) without having registered with the securities commissioner." *Flinn v. State* (1990), Ind., 563 N.E.2d 536, 541. Finally, a loan broker is "any person who, in return for any consideration from any person, promises to procure a loan for any person or assists any person in procuring a loan from any third party, or who promises to consider whether or not to make a loan to any person." IC 23–2–5–3(a) (1988).

The evidence is that neither Study nor his company, Monarch, registered with the Secretary of State. Study represented himself as a resident agent and stockholder of Monarch, and he assured the Aasens that Monarch would help them secure loans and provide cash flow assistance when the Aasens' restaurant opened. In addition, the $10,000 that the Aasens were to give to Study was to be held in CDs as collateral to obtain the loans, and the fee for Study's

services was to be paid after the restaurant opened.

Once again Study maintains there is conflicting evidence, and again, we will not reweigh evidence or judge credibility. His argument that he never used the term loan broker and never told the Aasens he was a loan broker is similarly without merit, as the Act does not require the term to be employed by a person doing business as a loan broker. The evidence is sufficient to support Study's conviction of violation of the Act.

### II.

Study argues that the trial court erred when it refused to give his tendered instruction on conversion as a lesser included offense of theft, and also when it did not add an instruction reciting the statutory definition of "knowingly." He contends that these are reversible errors requiring a new trial.

### A.

██ Study tendered an instruction defining the offense of conversion[4] as a lesser included offense of theft[5] and asserts that the trial court erred by failing to give it. The two step inquiry for determining whether it was error for a trial court to refuse an instruction on a lesser offense is whether the lesser offense is necessarily included within the greater offense and whether there was evidence before the jury that the lesser included offense was committed and the greater one was not. *See Aschliman v. State* (1992), Ind., 589 N.E.2d 1160, 1162; *Holder v. State* (1991), Ind., 571 N.E.2d 1250, 1256; *Rogers v. State* (1979), Ind., 272 Ind. 65, 396 N.E.2d 348, 354. Here, the first prong of this test is met because conversion is a lesser included offense of theft. *Aschliman*, 589 N.E.2d at 1161. The resolution of the second prong hinges on whether a serious evidentiary dispute exists respecting the element that distinguishes the greater from the lesser offense. *Id.* at 1162.

---

**4.** *See* IC 35–43–4–3 (1988).

**5.** *See* IC 35–43–4–2.

The factor distinguishing conversion from theft is the intent to deprive another person of his or her property's value or use. *Compare* IC 35–43–4–3 *with* IC 35–43–4–2. Study's testimony belies his claim that the element of intent to deprive was an issue. Study testified that the $6000 he obtained from the Aasens was part of his consultant's fee and that he cashed one of the $3000 cashier's check he received from the Aasens and deposited the other in a personal bank account. In addition, Study never returned the money to the Aasens. Thus, Study's defense was a claim of right. Therefore, based upon his testimony the jury could not have found Study guilty of the lesser offense, conversion, and not guilty of the greater offense, theft. *See Snuffer v. State* (1984), Ind.App., 461 N.E.2d 150, 155–56 (A trial court may properly refuse to give a tendered instruction when not support by the evidence at trial. In addition, an instruction can also be refused when it is incompatible with the defense raised by the Defendant at trial.).

The evidence of intent to deprive does not support the giving of an instruction on conversion; thus the court did not err when it refused to give Study's tendered instruction on conversion as a lesser included offense of theft.

### B.

Study contends the trial court erred when it failed to give an instruction which defined the term "knowingly." Study did not tender an instruction on the definition of knowingly, nor did he object at trial to the lack of such an instruction. He does, however, in his brief, argue that "knowingly" is an essential element of both crimes with which he was charged, and thus the absence of an instruction defining this element amounts to reversible error. Because Study did not preserve his objection at trial, he has waived appellate review unless he shows the alleged error rises to the level of fundamental error. *Lacy v. State* (1982), 438 N.E.2d 968, 970.

This issue falls squarely within *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236, in which the appellant argued that the trial court, sua sponte, should have instructed the jury as to the definitions of "knowingly" and "intentionally." *Id.* at 1239. Our supreme court noted that these are terms of art and have special legal definitions. *Id.;* IC 35–41–2–2 (1988); *see also Smith v. State* (1981), Ind., 422 N.E.2d 1179, 1184. The use of a term of art requires a further instruction on the definition of that word and the trial court has a duty to give such instructions. *Abercrombie,* 478 N.E.2d at 1239.

Here, however, like in *Abercrombie,* the trial court instructed the jury on the elements of both theft and violation of the Act. Study did not tender more complete instructions, and does not identify any special prejudicial effect resulting from the omission. Under these circumstances, the error in instructions did not impinge on a substantial right and rise to the level of fundamental error, and thus is waived absent contemporaneous objection. *See Lacy,* 438 N.E.2d at 970.

### III.

Study contends that his conviction and sentence for two counts of theft and his conviction and sentence for two counts of violating the Act violate his protections against double jeopardy. Study's argument rests on article 1, section 14 of the Indiana Constitution and the Fifth Amendment applied to the States through the Fourteenth Amendment of the United States Constitution, both of which prohibit multiple punishments for the same offense. *See King v. State* (1988), Ind., 517 N.E.2d 383, 385. *Hurst v. State* (1984), Ind.App., 464 N.E.2d 19, 21; *see also Marshall v. State* (1992), Ind.App., 590 N.E.2d 627.

Study was charged, convicted, and sentenced for one count of theft and one count of violating the Act for conduct occurring on April 18, 1990, and for one count of each offense for conduct occurring on May 3, 1990. The issue is whether Study's conduct, separated by sixteen days, constitute single continuing offenses, i.e., one theft and one violation of the Act, or multiple offenses of each crime.

We conclude Study's multiple convictions for theft can stand; however, the conviction and sentence for one violation of the Act must be vacated.

A continuing offense is "a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy; a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences." 22 C.J.S. *Criminal Law* § 3(b), at 4 (1989).

■ IC 23–2–5–4, as enacted by our legislature, requires any person who does an act of loan brokering to register with the securities commissioner. A person who knowingly fails to do so commits a class D felony. IC 23–2–5–16. The definition consists of the prohibited conduct, failing to register with the securities commissioner, and the presence of an attendant circumstance, a knowing or intentional act of loan brokering. So defined, an individual who fails to register continuously commits an offense, i.e., by failing to register, the individual commits a criminal act that continues, and is continuous, until such time as the individual is prosecuted for the offense. Therefore, we conclude the legislature intended that an act of loan brokering without first registering constitutes one single indivisible offense, punishable by a single conviction and sentence. *See Pruitt v. State* (1990), Ind.App., 557 N.E.2d 684. Consequently, Study committed only one violation of the Act when he knowingly did an act of loan brokering without registering with the securities commissioner on April 18, 1990, and that that offense continued and included the conduct on May 3, 1990, i.e., only one crime occurred regardless of the number of subsequent acts of loan brokering. In this way, the offense of violating the Act is similar to the offense of theft where only one crime occurs when a thief exercises unauthorized control over the property of the owner with the intent to deprive the owner of the use and benefit of the property on day 1, and continues to deprive the owner of property of its use

and benefit for many days thereafter. Therefore, imposition of separate judgments and sentences for multiple counts of Act violations is improper.

However, the multiple convictions and sentences for theft can stand. When a person exerts unauthorized control over an item of property belonging to another person on day 1, and, on day 2, exerts unauthorized control over another item of property belonging to the same person, and, on day 3, exerts unauthorized control over yet another item belonging to the same person, and, on numerous successive days, exerts unauthorized control over another item of property of each successive day, all belonging to the same person, the offense prohibited by statute has been violated several times over.

In the instant case, Study exerted control over the first check by depositing it in his bank account and two weeks later exerted control over the second check by cashing it. We cannot disagree with the fact finder's determination that Study did not intend to deprive the Aasens' of the use and benefit of the first $3,000 until he deposited the monies in his own account and that he did not intend to deprive them of the use and benefit of the second $3,000 until he cashed the check and took the proceeds. Because Study committed the actus reus, exerting unauthorized control over separate items of the Aasens' property obtained on two separate occasions, the judgments and convictions for two counts of theft do not violate double jeopardy. *See Wiseman v. State* (1988), Ind., 521 N.E.2d 942 (Affirming conviction and sentence for seven counts of theft because the several thefts (negotiated checks) "occurred at different times, at various bank branches, involved separate checks, and occurred on various days." 521 N.E.2d at 946). *See also Allread v. State* (1991), Ind.App., 582 N.E.2d 899, 902 (The State was entitled to pursue the theory that the Defendant committed nine counts of theft, one theft each time he wrote a check from an escrow account to his personal bank account.).

■ Study also asks us to consider the two theft counts as one theft under the

single larceny rule. According to that rule, when several articles of property, belonging to the same or several persons, are taken at the same time, from the same place, there is but a single larceny and only one offense. *Marshall*, 590 N.E.2d at 630; *Raines v. State* (1987), Ind., 514 N.E.2d 298, 300. The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design, and thus only one offense is committed. *Raines*, 514 N.E.2d at 300. Because the single larceny rule only applies to property taken at the same time, Study's convictions for two counts of theft do not fall under this rule. *See Marshall*, 590 N.E.2d at 630.

This cause is remanded to the trial court with instructions to vacate one of the judgments of conviction and sentence of the Indiana Loan Broker Act after which, in all other respects, the trial court's judgment is affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.