**ILLIANA SURGERY & MEDICAL CENTER, LLC., Appellant–Defendant,**

v.

**STG FUNDING, INC., Appellee–Plaintiff.**

No. 45A05–0405–CV–247.

Court of Appeals of Indiana.

March 22, 2005.

Mark A. Bates, Schererville, IN, William I. Fine, Highland, IN, Attorneys for Appellant.

L. Charles Lukmann, III, Charles F.G. Parkinson, Harris Welsh & Lukmann, Chesterton, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Illiana Surgery & Medical Center, LLC ("Illiana") appeals a judgment in favor of

STG Funding, Inc., ("STG") on STG's complaint against Illiana. Illiana raises five issues, which we revise and restate as:

I. Whether the trial court erred by denying Illiana's motion for summary judgment;

II. Whether the trial court abused its discretion by refusing to admit evidence regarding an October 2000 loan commitment letter that had been lost or destroyed;

III. Whether the trial court erred by denying Illiana's motion for judgment on the evidence pursuant to Ind. Trial Rule 50(A);

IV. Whether the trial court erred by refusing to instruct the jury with Illiana's tendered instructions;

V. Whether the evidence is sufficient to sustain the jury's verdict; and

VI. Whether the jury's damage award is excessive.

We affirm.[1]

The relevant facts follow. In January 2000, STG was incorporated and began operating a loan brokering business. Pat Riley, Tim Harris, and Ed Rich were the principals of STG. Riley had the primary responsibility of bringing in new clients and finding lenders for them.

In the summer of 2000, Riley approached Dr. Vijay Gupta, a member of Illiana and the president of Physicians Management of Indiana, Inc. ("PMI"), regarding STG's loan brokering business. Illiana was having difficulty finding financing for an expansion of its surgery center. Gupta referred Riley to Harold Collins, an attorney who was the Chief Financial Officer and a member of Illiana and on the Board of Directors of PMI. On August 17, 2000, Riley presented Collins with an agreement that provided:

> We propose to acquire for you commitments from a reputable bank or other type of lender on either all or some portion of your entire financing needs. Our assignment is not exclusive except with regards to the lenders we bring to you.
>
> The loan amount and other terms must be acceptable to you. **If the loan(s) close, STG shall have earned a fee of 1.00% of the loan amount(s) that closes** and shall receive this fee at the closing(s).
>
> If the above is acceptable, both parties execute below their acceptance.

Plaintiff's Exhibit 1 (emphasis in original). Collins revised the agreement to reflect a fee of 0.5% rather than 1.00% "subject to approval by the Boards of Directors of the above companies" and both Collins and Riley initialed the change. *Id.* Collins signed the agreement as CFO of Illiana, and Riley signed the agreement on behalf of STG. Later, during a telephone call with Collins, Riley informed Collins that his partners had approved the agreement. Collins told Riley that the change in fee "was fine with them as well." Transcript at 76.

Riley then took information provided by Collins, analyzed the information, and organized the information in a manner that "would be presentable and [would] be most attractive to the lenders that [he] was contacting." *Id.* at 77–78. Riley sent the financing request package to seven lenders, including Donn Walling at National City Bank ("National City"). Walling expressed interest in providing financing for Illiana's expansion and asked Riley to arrange a meeting.

---

1. We remind Illiana that Ind.App. Rule 46(A)(10) requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

On August 25, 2000, Riley arranged and attended a meeting between Gupta, Collins, Walling, Brian Boilek, who was an officer in National City's commercial loan department, and other officers of National City. National City expressed an interest in providing financing, and the parties scheduled a follow-up meeting for September 7, 2000. Riley, Gupta, Collins, and the officers from National City attended the September 7, 2000, meeting, and a few days later, National City presented Illiana with a financing proposal.

On October 3, 2000, Collins replied to National City's proposal and addressed certain details of the proposed financing. With respect to National City's loan fee, Collins wrote: "Since we are going to have to pay Pat Riley a commission the loan fee should not exceed a total of 1% or you should agree to pay him out of your 1% fee" and "I renew my comments as indicated above in regard to the 1% loan commission which needs to either be reduced or your bank needs to cover our commission arrangement with Pat Riley." Plaintiff's Exhibit 9. National City refused to pay Riley's fee. On October 24, 2000, National City issued a loan commitment letter to Illiana, and a loan closing was scheduled for December 2000.[2] However, Collins was dissatisfied with some documentation and title insurance company fees, and the closing did not occur.

After additional negotiations, National City issued another commitment letter on April 5, 2001, which provided in part:

This commitment is an extension and modification of the original commitment letter dated and executed October 24, 2000 (Exhibit A.) National City does not relinquish any rights under the original commitment. This commitment reflects modifications to the structure and dollar amounts negotiated between National City and Borrower after the date of the original commitment.

Plaintiff's Exhibit 24. The loan closed on April 9, 2001, and Boilek noted that National City had closed a $25 million relationship with Illiana and funded $13 million of the loan. However, closing documents indicate that National City loaned the following to Illiana:

202. Principal Amount of new loan(s)      $ 8,600,000

\* \* \* \* \*

206. Revolving Note (Full Amount $3,500,000)   $2,218,205.34
207. Term Loan ($500,000.00)
208. Construction Loan ($9,600,000.00)

Plaintiff's Exhibit 25. Thus, the closing documents indicate that National City loaned $22.2 million to Illiana and funded $10,818,205.34.

On May 21, 2001, National City issued another loan commitment letter to Illiana, which provided, in part: "This letter reaffirms our commitment for Facility 6, 'Bro-adwest Acquisition' in our original commitment letter dated April 5, 2001." Plaintiff's Exhibit 27. As part of the May 21, 2001, commitment, National City agreed to loan Illiana up to $2,000,000.

Illiana did not pay the 0.5% fee to STG, and STG filed a complaint against Illiana and PMI, alleging breach of contract, and

2. A loan commitment is "a legal document between a bank and a borrower that states the loan amount and also states the various steps necessary to ... move toward a loan closing." Transcript at 83.

against National City, alleging tortious interference with a contract. Illiana and PMI filed a counterclaim against STG, alleging that STG violated the Indiana Loan Broker Act, Ind.Code §§ 23–2–5–1 to –21 ("Loan Broker Act"), that the loan brokerage agreement was void, and that Illiana and PMI were entitled to attorney fees.

Illiana, PMI, and National City filed motions for summary judgment. After a hearing, the trial court granted National City's motion for summary judgment, but denied the motion for summary judgment filed by Illiana and PMI as follows:

> STG filed its complaint against Illiana for breach of contract to pay a commission for obtaining financing for a transaction for which Illiana needed funding. STG's claim against Illiana is based upon a letter dated August 17, 2000 on STG Funding, Inc. stationery wherein an employee of STG, Patrick M. Riley, proposed to the Chief Financial Officer of Illiana, Harold E. Collins, the terms of the agreement for obtaining financing arrangements and the payment of the commission. In that document, the parties changed the original fee of 1% to .5%, both parties initialing the change, indicated that the acceptance of the proposal was "subject to the approval by the Boards of Directors of the above companies," and signed the document.

> \* \* \* \* \*

> Both defendants claim there is not an enforceable contract because the letter of August 17, 2000 is insufficient; it does not set out the essential terms of the agreement and violates Indiana's Loan Broker Act (ILBA) in several aspects. Illiana also claims the letter agreement is not enforceable because there was no board approval as required.

> \* \* \* \* \*

> Illiana contends that the agreement for the payment of the commission falls within the statute of frauds in the ILBA and therefore, is unenforceable. Although there is little case law in regard to the ILBA, STG analogizes the circumstance to the provisions under the real estate agent statutes regarding the requirement of listing contracts for the payment of commissions having to be in writing. Having reviewed the letter agreement and the law, the court finds that the letter of August 17, 2000 is sufficient to meet the requisites of a writing as it has sufficient information in it for the performance of the agreement of the parties. See, *First Federal Savings Bank of Indiana v. Galvin,* 616 N.E.2d [1048], 1055–56 (Ind.Ct.App. 1993), [*trans. denied*].

> Illiana further argues that the alleged contract is indefinite because essential terms are lacking and therefore, under a contract analysis, the August 17, 2000 letter is unenforceable. To determine whether a contract is enforceable, there are two interrelated areas that must be considered: "intent to be bound and definiteness of term." *Wolvos v. Meyer,* 668 N.E.2d 671, 675 (Ind.1996). In examining the parties' intent at the time the agreement was drafted, the court will look to whether the parties intended to execute a subsequent written document. *Id.* The August 17, 2000 letter is accepted by both parties, only subject to the approval of the board of directors; there is no evidence there is to be any other or further agreement; thus, there is intent to be bound. As to definiteness, only essential terms need to be included to render a contract enforceable and all that is required is reasonable certainty in the terms and conditions of the promise made including by whom and to whom. *McClindon*

[*McClinden*] *v. Coco,* 765 N.E.2d 606, 613 (Ind.Ct.App.2002). There is reasonable certainty in the terms and conditions of the promise by Illiana to pay STG a commission should it acquire a commitment for Illiana's financing from a reputable bank or lender. The contract is sufficiently definite to enforce.

Next, Illiana argues that STG and/or Riley was not licensed to be a loan broker under ILBA at the time of the transaction and therefore, the agreement is void. At the time Riley executed the August 17, 2000 letter he did not have to have a certificate of registration to engage in loan origination activities under the Act. I.C. 23–2–5(d) (1999) STG was licensed at the time pursuant to the same section. Although registration and licensure changed as of January 1, 2001 the agreement sued upon was entered prior and thus, the agreement is enforceable under the ILBA. The same conclusion is reached as to the argument STG was suspended and later gave up its license. All of these events were subsequent to the agreement and even the closing of the transaction and do not impact the enforceability of the August 17, 2000 agreement.

Lastly, Illiana argues that the agreement was not approved by its Board of Directors and that as a result, the agreement is unenforceable. STG points to the facts that Collins, chief financial officer, wrote a letter on October 3, 2000, indicating that a commission would have to be paid to STG and Collins' notes of December 30, 2000 also indicate that Illiana had to negotiate a settlement with Riley concerning the fee. STG contends this shows approval or ratification. The court finds there is at least an issue of fact in regard to whether the Board of Directors of Illiana approved and/or ratified the agreement with STG. Thus, considering all of Illiana's arguments, the court concludes that there are genuine issues of material fact to be determined by the trier of fact and Illiana's Motion for Summary Judgment must be denied.

Appellant's Appendix at 11–14.

A jury trial was held on STG's claim against Illiana and PMI. During Illiana's cross-examination of Boilek, Illiana sought to question Boilek regarding the contents of the October 2000 loan commitment letter, which the parties had been unable to locate. STG objected on the basis of the best evidence rule and the parol evidence rule. The trial court sustained STG's objection.

After STG presented its case-in-chief, Illiana and PMI moved for judgment on the evidence pursuant to Ind. Trial Rule 50(A) and argued: (1) the Loan Brokers Act required the agreement to be in writing and the board approvals were not in writing; (2) no evidence was presented to demonstrate that PMI acquired a loan commitment or a loan; and (3) no evidence was presented to demonstrate that Riley acquired commitments for Illiana. The trial court granted PMI's motion for judgment on the evidence but denied Illiana's motion. STG also filed a motion for judgment on the evidence pursuant to Ind. Trial Rule 50 regarding Illiana's counterclaim under the Loan Brokers Act and argued in part that STG and Riley were exempt from the license/registration and statute of frauds requirements of the Loan Brokers Act pursuant to Ind.Code § 23–2–5–19(a)(5). The trial court denied STG's motion, in part, and took the exemption argument of the motion under advisement.

In considering final jury instructions, the trial court refused to give Illiana's proposed instruction no. 3 regarding licenses required under the Loan Brokers Act, proposed instruction no. 4 regarding

the writing requirement of the Loan Brokers Act, and proposed instruction no. 6 regarding the voiding of a contract that violates the Loan Brokers Act. The trial court also refused to give a portion of Illiana's proposed instruction no. 7 regarding a broker's duties.

The jury found for STG on its claim against Illiana and found that STG's damages were $121,000.00. The jury also found for STG on Illiana's counterclaim. Illiana filed a motion to correct error pursuant to Ind. Trial Rule 59 and argued that: (1) the trial court erred by denying its motion for judgment on the evidence; (2) the jury's verdict was excessive; (3) the trial court abused its discretion by refusing to admit parol evidence regarding the October 2000 loan commitment letter; (4) the verdict was contrary to law because Riley did not acquire the loans; (5) the trial court erred by refusing Illiana's proposed instructions; and (6) the trial court erred by denying Illiana's motion for summary judgment. The trial court denied Illiana's motion to correct error.

## I.

The first issue is whether the trial court erred by denying Illiana's motion for summary judgment. Our standard of review for a trial court's grant or denial of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

Illiana filed a motion for summary judgment, which the trial court denied. On appeal, Illiana argues that the alleged contract between STG and Illiana is void under the Loan Brokers Act because: (1) Riley was not properly registered under the Loan Brokers Act; (2) the alleged contract does not contain essential terms and does not constitute a writing; and (3) acceptance of the contract was conditioned upon approval by the companies' boards and such acceptance had to be in writing. We begin by addressing the applicability of the Loan Brokers Act to this transaction.

To determine whether the Loan Brokers Act is applicable to this transaction, we must analyze the statute. If a statute is unambiguous, we may not interpret it, but must give the statute its clear and plain meaning. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind.2001). If a statute is ambiguous, however, we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* A statute is ambiguous where it is susceptible to more than one interpretation. *Id.*

At the time of the alleged agreement between STG and Illiana in August 2000, the Loan Brokers Act in part required loan brokers and their employees to meet various license and/or registration requirements and made contracts for the services of a loan broker subject to a statute of frauds writing requirement. Ind.Code §§ 23–2–5–1 to –21 (Supp.2000). Further, Ind.Code § 23–2–5–15 (Supp.2000) provided that "[i]f a person violates any provision of this chapter, in connection with a contract for loan brokering services, the contract is void. . . ."

■ A "loan broker" was defined as "any person who, in return for any consideration from any person, promises to procure a loan for any person or assist any person in procuring a loan from any third party, or who promises to consider whether or not to make a loan to any person." I.C. § 23–2–5–3(e) (Supp.2000)[3]; *see also* I.C. § 23–2–5–3(e)(1)–(4) (excluding certain persons, such as banks and insurance companies from the definition of loan brokers). However, STG argues that the license/registration and statute of frauds writing requirements of the Loan Brokers Act were inapplicable as a result of Ind.Code § 23–2–5–19(a) (Supp.2000),[4] which provided:

> The following persons are exempt from the requirements of sections 4, 5, 6, 9, 10, 17, and 18 of this chapter:
>
> \* \* \* \* \*
>
> (5) Any person that:

(A) procures;

(B) promises to procure; or

(C) assists in procuring;

a loan that is not subject to the Truth in Lending Act (15 U.S.C. 1601 through 1667e).

Sections 4, 5, and 6 pertain to the license/registration requirements, and section 9 pertains to the statute of frauds writing requirement. This section of the Loan Brokers Act unambiguously exempts a person who procures, promises to procure, or assists in procuring a loan that is not subject to the Truth in Lending Act from the sections of the Loan Brokers Act dealing with license/registration requirements and the statute of frauds writing requirement.

■ According to STG, Ind.Code § 23–2–5–19(a)(5) exempted Riley and STG from compliance with the Loan Brokers Act because this was a commercial transaction and, thus, the loan was not subject to the Truth in Lending Act. We agree. The Truth in Lending Act applies to consumer credit transactions. *See* 15 U.S.C. § 1602, 1603. Consequently, a person that procures, promises to procure, or assists in procuring a commercial loan is exempt from the license/registration and statute of frauds requirements of the Loan Brokers Act. Because STG and Riley assisted Illiana in procuring a commercial loan, which was not subject to the Truth in Lending Act, they were exempted from the Loan Broker Act's license/registration and statute of frauds requirements.[5] As a result, the contract between STG and Illia-

---

**3.** Subsequently amended by Pub.L. No. 115–2001, § 1 (eff. Jan. 1, 2002) and Pub.L. No. 73–2004, § 12 (eff. July 1, 2004).

**4.** Subsequently amended by Pub.L. No. 73–2004, § 13 (eff. July 1, 2004).

**5.** In support of its argument that the exemption of Ind.Code § 23–2–5–19(a)(5) is inapplicable, Illiana relies upon *Study v. State*, 602

N.E.2d 1062 (Ind.Ct.App.1992), *reh'g denied*. There, Study was charged with theft and violations of the Loan Brokers Act after he agreed in 1990 to help a couple secure loans to start a restaurant and took thousands of dollars from them without performing any work. *Id.* at 1064–1066. We affirmed his convictions. *Id.* According to Illiana, *Study* indicates a desire by the Indiana legislature to

na was not required to be in writing, and Riley was not required to be registered. Therefore, Illiana's arguments that the alleged contract was void because Riley did not meet the registration requirement and because the contract did not meet the statute of frauds writing requirement fail.[6]

■■■ Illiana also argues that the contract was unenforceable because it did not contain the necessary essential terms.[7] Only essential terms need be included to render a contract enforceable. *McLinden v. Coco*, 765 N.E.2d 606, 613 (Ind.Ct.App. 2002). "All that is required is reasonable certainty in the terms and conditions of

the promises made, including by whom and to whom." *Id.* (quoting *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind.1996)). Absolute certainty in all terms is not required. *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind.Ct.App.1993).

The contract here contained the following language:

> We propose to acquire for you commitments from a reputable bank or other type of lender on either all or some portion of your entire financing needs. Our assignment is not exclusive except with regards to the lenders we bring to you.

---

protect the public by requiring individuals holding themselves out as loan brokers to be governed by the Loan Brokers Act.

. We find *Study* to be distinguishable for two reasons. First, the exemption at issue was substantially amended in 1992, after *Study* was prosecuted. Prior to 1992, Ind.Code § 23–2–5–19(a)(5) provided an exemption for "[a]ny person whose fee is wholly contingent on the successful procurement of a loan from a third party and to whom no fee, other than a bona fide third party fee, is paid before the procurement." Ind.Code § 23–2–5–19(a)(5) (subsequently amended by Pub.L. No. 113–1992, § 8 (eff. July 1, 1992)). However, the subsection also provided that "a person described in this subdivision shall comply with section 8(d) of this chapter unless the creditor pays the fee directly to the broker without any additional cost being charged to the borrower." *Id.* The language of the statute was substantially amended, and we must look to the clear, unambiguous language of the current statute. Second, it does not appear that the parties argued in *Study* that any of the exemptions in Ind.Code § 23–2–5–19 were applicable. Consequently, Ind.Code § 23–2–5–19 was not analyzed in *Study*.

Illiana also relies upon *Becker v. Four Points Inv. Corp.*, 708 N.E.2d 29 (Ind.Ct.App. 1999), *reh'g denied, trans. denied,* where we held "[r]eading the [Loan Brokers Act] as a whole, it appears that the primary and perhaps sole purpose of the statute is to regulate loan brokering in an effort to protect those who transact business with loan brokers." *Id.* at 31. However, *Becker* concerned a

claim against a bond required by the Loan Brokers Act and did not mention or analyze Ind.Code § 23–2–5–19(a)(5). As noted, we must give effect to the clear, unambiguous language of the statute, which exempted STG from the license/registration requirements and the statute of frauds writing requirement for this transaction.

6. Although the trial court disposed of Illiana's motion for summary judgment on a different basis, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Rice*, 670 N.E.2d at 1283. We will affirm the trial court's summary judgment ruling on appeal if sustainable on any basis. *Ind. State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 622 N.E.2d 935, 940 (Ind. 1993), *cert. denied*, 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). Furthermore, when the trial court revisited these issues in ruling on Illiana's motion for judgment on the evidence and the jury instructions, the trial court found that the commercial transaction was exempt from the Loan Brokers Act requirements under Ind.Code § 23–3–5–19(a)(5).

7. Illiana also argues that the boards' approvals of the contract had to be in writing because of the Loan Brokers Act's statute of frauds writing requirement. However, because we have held that STG was exempt from the Loan Brokers Act under Ind.Code § 23–2–5–19(a)(5), neither the contract nor the boards' approvals of the contract were required to be in writing.

The loan amount and other terms must be acceptable to you. **If the loan(s) close, STG shall have earned a fee of 1.00% of the loan amount(s) that closes** and shall receive this fee at the closing(s).

If the above is acceptable, both parties execute below their acceptance.

Appellant's Appendix at 82 (emphasis in original). Collins revised the agreement to reflect a fee of 0.5% rather than 1.00% "subject to approval by the Boards of Directors of the above companies." *Id.* Collins signed the agreement as CFO of Illiana, and Riley signed the agreement on behalf of STG.

According to Illiana, the contract is "lacking in definite terms as to what actions were necessary by the parties pursuant to the agreement or to show that STG acquired the loan." Reply Brief at 6. The trial court disagreed and found "[t]here is reasonable certainty in the terms and conditions of the promise by Illiana to pay STG a commission should it acquire a commitment for Illiana's financing from a reputable bank or lender. The contract is sufficiently definite to enforce." Appellant's Appendix at 13. We agree with the trial court.

The agreement contained a description of STG's duties, i.e., "acquire for [Illiana] commitments from a reputable bank or other type of lender on either all or some portion of [Illiana's] entire financing needs." *Id.* at 82. The agreement also specified the fee to be paid STG for its work, i.e., "[i]f the loan(s) close, STG shall

have earned a fee of [0.5]% of the loan amount(s) that closes and shall receive this fee at the closing(s)." *Id.* Absolute certainty with respect to all terms of the agreement was not necessary. The essential terms of the agreement, such as the basic obligations of STG and Illiana, were included. Thus, we conclude that the contract was enforceable. Because the Loan Brokers Act was inapplicable and the contract contained the essential terms, the trial court properly denied Illiana's motion for summary judgment.[8]

## II.

The next issue is whether the trial court abused its discretion by refusing to admit evidence regarding an October 2000 loan commitment letter that had been lost or destroyed. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion. *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 926 (Ind.Ct.App. 2003), *reh'g denied, trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* Further, Ind. Evidence Rule 103(a) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stat-

---

8. Illiana also argues "[f]rom the testimony produced at trial, the loan obtained from National City Bank was not acquired due to Riley's sustained efforts. Instead, he merely arranged a personal introduction between the bank and Illiana." Appellant's Brief at 13. In reviewing the trial court's decision on Illiana's motion for summary judgment, we are limited to consideration of the designated evi-

dence. *Goodrich v. Ind. Mich. Power Co.*, 783 N.E.2d 793, 795 (Ind.Ct.App.2003), *trans. denied.* As the trial had not yet occurred at the time the trial court ruled on the motion for summary judgment, we cannot consider the testimony produced at trial. This argument is more appropriately made and addressed in Part V, which concerns the sufficiency of the evidence.

ing the specific ground of objection, if the specific ground was not apparent from the context; or

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

During Illiana's cross-examination of Boilek, Illiana sought to question Boilek regarding the contents of the October 2000 loan commitment letter, which the parties had been unable to locate. Illiana sought to introduce Boilek's testimony to demonstrate that the October 2000 loan commitment letter was different than the April 2001 loan commitment letter and, thus, show that Riley did not "acquire" the April 2001 loan commitment. The April 2001 loan commitment letter provided, in part:

This commitment is an extension and modification of the original commitment letter dated and executed October 24, 2000 (Exhibit A.) National City does not relinquish any rights under the original commitment. This commitment reflects modifications to the structure and dollar amounts negotiated between National City and Borrower after the date of the original commitment.

Plaintiff's Exhibit 24. STG objected on the basis of the best evidence rule and the parol evidence rule. The trial court sustained STG's objection but allowed Illiana to make an offer to prove that the October 2000 loan commitment letter contained language that the closing must take place within thirty days or expire.

On appeal, Illiana argues that the evidence was admissible under Ind. Evidence Rule 1004, which allows the admission of evidence of the contents of a writing where the original is lost unless the proponent lost or destroyed the document in bad faith. According to Illiana, there was no allegation that the October 2000 loan commitment letter had been destroyed on purpose or deliberately concealed from STG, and "parol evidence was necessary to show that the bank put in language that the April commitment was an extension of the October in order to not give up their derivative claims but for all intents and purposes the October loan commitment expired by its own terms." Appellant's Brief at 29. STG argues that the evidence was inadmissible under the parol evidence rule.

▮ Generally, where the parties to an agreement have reduced the agreement to a written document and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract. *Millner v. Mumby*, 599 N.E.2d 627, 629 (Ind.Ct.App.1992). Here, the April 2001 loan commitment letter contained an integration clause. *See* Plaintiff's Exhibit 24 at 11 ("All terms and conditions of this commitment are included herein; there are no other agreements, either written or verbal."). Thus, the parol evidence rule prohibited the trial court from considering parol evidence for the purpose of varying the terms of the April 2001 loan commitment letter. The April 2001 loan commitment letter provided that it was "an extension and modification" of the October 2000 loan commitment letter. *Id.* at 1. Illiana sought to introduce evidence that the October 2000 loan commitment letter expired after thirty days and, thus, sought to introduce parol evidence to vary the terms of the April 2001 loan commitment letter in violation of the parol evidence rule. Consequently, the trial court did not abuse its discretion when it sustained STG's objection to the evidence of the October 2000 loan commitment let-

ter. *See, e.g., I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.,* 695 N.E.2d 1030, 1036 (Ind.Ct.App.1998) (holding that the parties' contract was fully integrated and that we could not consider parol evidence), *trans. denied.*

■ Moreover, even assuming arguendo that the trial court abused its discretion by excluding the testimony concerning the October 2000 loan commitment letter, any error was harmless. As noted above, Ind. Evidence Rule 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Illiana contends that it was prejudiced by the exclusion of the testimony because "the jury was left with the impression that the loan closed on in April was the same loan proposed back in October, 2000." Appellant's Brief at 29. Although the trial court excluded Boilek's testimony regarding the contents of the October 2000 loan commitment letter's thirty-day term, evidence regarding the differences between the October 2000 loan commitment letter and the April 2001 loan commitment letter was admitted at other times during the trial. *See* Transcript at 275–276, 289. Consequently, Illiana has not demonstrated that its substantial rights were prejudiced by the trial court's exclusion of Boilek's testimony. *See, e.g., Hite v. Haase,* 729 N.E.2d 170, 180 (Ind.Ct.App.2000) (holding that any error in the exclusion of evidence was harmless because the excluded testimony was cumulative of other evidence).

### III.

■ The next issue is whether the trial court erred by denying Illiana's motion for judgment on the evidence pursuant to Ind. Trial Rule 50(A). The standard of review for a challenge to a ruling on a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. *Kirchoff v. Selby,* 703 N.E.2d 644, 648 (Ind.1998). A motion for judgment on the evidence is governed by Ind. Trial Rule 50(A), which provides:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

The court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Kirchoff,* 703 N.E.2d at 648.

After STG presented its case-in-chief, Illiana moved for judgment on the evidence pursuant to Ind. Trial Rule 50(A) and argued: (1) the Loan Brokers Act required the agreement to be in writing and the board approvals were not in writing; and (2) no evidence was presented to demonstrate that Riley acquired commitments for Illiana. The trial court denied Illiana's motion for judgment on the evidence.

On appeal, Illiana argues only that the trial court erred by denying its motion for judgment on the evidence because the registration and statute of frauds provisions of the Loan Brokers Act were violated. We have already held that because STG and Riley assisted Illiana in procuring a commercial loan, which was not subject to the Truth in Lending Act, they were exempted from the Loan Broker Act's license/registration and statute of frauds requirements pursuant to Ind.Code § 23–2–5–19(a)(5). *See supra* Part I. Consequently, the trial

court did not err by denying Illiana's motion for judgment on the evidence on this basis. *See, e.g., Northern Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 467 (Ind. 2003) (holding that the trial court properly denied a party's motion for judgment on the evidence).

## IV.

The next issue is whether the trial court erred by refusing to instruct the jury with Illiana's tendered instructions. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction: (1) correctly states the law; (2) is supported by the evidence in the record; and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind.2002), *reh'g denied.* The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. *Id.* When an instruction is challenged as an incorrect statement of the law, however, appellate review of the ruling is de novo. *Id.* at 893–894. A party seeking a new trial on the basis of an improper jury instruction must show a reasonable probability that substantial rights of the complaining party have been adversely affected. *Elmer Buchta Trucking,* 744 N.E.2d at 944.

In considering final jury instructions, the trial court refused to give Illiana's proposed instruction no. 3 regarding license/registration requirements of the Loan Brokers Act, proposed instruction no. 4 regarding the writing requirement of the Loan Brokers Act, and proposed instruction no. 6 regarding the voiding of a contract that violates the Loan Brokers Act. The trial court refused to give the proposed instructions because it found that STG was exempt from the Loan Brokers Act. We have already held that because

STG and Riley assisted Illiana in procuring a commercial loan, which was not subject to the Truth in Lending Act, they were exempted from the Loan Broker Act's license/registration and statute of frauds requirements pursuant to Ind.Code § 23–2–5–19(a)(5). *See supra* Part I. Thus, these instructions were not supported by the evidence. Further, because STG was exempt from these requirements, there was no basis for instructing the jury on voiding of a contract that violates the Loan Brokers Act. Consequently, the trial court did not err by refusing to give Illiana's proposed instruction nos. 3, 4, and 6 regarding licenses and registrations required under the Loan Brokers Act, the writing requirement of the Loan Brokers Act, and the voiding of a contract that violates the Loan Brokers Act. *See, e.g., Morgen v. Ford Motor Co.,* 797 N.E.2d 1146, 1153 (Ind.2003) ("It is unquestionably error for a trial court to give an instruction on a proposition of law about which there was no evidence."), *reh'g denied.*

The trial court also refused a portion of Illiana's proposed instruction no. 7, which provided:

Under the ordinary brokerage contract, the broker must be the procuring, efficient or effective cause of acquiring a loan commitment for a loan which ultimately closes. This has been defined as meaning:

"An agent is an 'effective cause' ... when his efforts have been sufficiently important in achieving a result for the accomplishment of which the principal has promised to pay him so that it is just that the principal should pay the promised compensation to him."

A broker may be the first to direct the attention of a prospective lender to the borrower, or to introduce the borrower to the lender, and yet not be the procur-

ing cause of the commitment. There is a difference between a brokerage contract to furnish a loan commitment and a contract to furnish a lender. In the first, it's the duty of the broker to perfect a loan on the prescribed terms submitted to him and in the second the commission is earned when he had introduced and brought together his client and a lender between whom a deal is perfected.

Appellant's Appendix at 48 (footnotes omitted). The trial court refused to give the last paragraph of the proposed instruction because it was "redundant" with the first paragraph and because it made argument that was more appropriate for closing argument. Transcript at 459. It is not error to refuse a redundant instruction, *Smith v. State,* 506 N.E.2d 31, 33 (Ind.1987), or an argumentative instruction, *Evans v. Breeden,* 164 Ind.App. 558, 563, 330 N.E.2d 116, 119 (Ind.Ct.App. 1975), *reh'g denied.* We agree that the last paragraph of Illiana's proposed instruction was argumentative and more appropriate for a closing argument than a jury instruction. Thus, the trial court did not err by refusing to instruct the jury with that portion of Illiana's proposed instruction. *See, e.g., id.* (holding that the trial court did not err by refusing to give a proposed instruction where the instruction was argumentative).

## V.

The next issue is whether the evidence is sufficient to sustain the jury's verdict. When reviewing a claim of insufficient evidence, we neither weigh the evidence nor judge the credibility of witnesses. *Bob Schwartz Ford, Inc. v. Dunham,* 631 N.E.2d 953, 955 (Ind.Ct.App.1994). Rath-

er, we may view only the evidence and reasonable inferences therefrom which support the verdict. *Id.* If substantial evidence of probative value establishes each material element of the claim, we will affirm the judgment. *Id.*

▮▮▮▮▮ Illiana argues that the evidence was insufficient to support a finding that Riley acquired a loan commitment for Illiana and, thus, STG was the first to breach the agreement.[9] "A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Assoc., Inc.,* 492 N.E.2d 48, 52 (Ind.Ct.App.1986), *reh'g denied, trans. denied.* The agreement required STG to "acquire for [Illiana] commitments from a reputable bank or other type of lender on either all or some portion of [Illiana's] entire financing needs." Plaintiff's Exhibit 1. Further, the jury was instructed that:

> Under the ordinary brokerage contract, the broker must be the procuring, efficient or effective cause of acquiring a loan commitment for a loan which ultimately closes. This has been defined as meaning:
>
> > "An agent is an 'effective cause' ... when his efforts have been sufficiently important in achieving a result for the accomplishment of which the principal has promised to pay him so that it is just that the principal should pay the promised compensation to him."

Transcript at 484.

According to Illiana, Riley did not "acquire" the commitment from National City because he merely put Illiana in contact with National City, presented a document

---

**9.** Illiana also argues that the contract lacked essential terms. We have already addressed this argument in Part I.

containing documents submitted by Collins, and followed up with a few telephone calls. Plaintiff's Exhibit 1. However, the evidence most favorable to the verdict presented at the trial reveals that after Illiana entered into the contract with STG, Riley took information provided by Collins, analyzed the information, and organized the information in a manner that "would be presentable and [would] be most attractive to the lenders that [he] was contacting." Transcript at 77–78. Riley sent the financing request package to seven lenders, including Walling at National City. Walling expressed interest in providing financing for Illiana's expansion and asked Riley to arrange a meeting.

On August 25, 2000, Riley arranged a meeting and attended a meeting between Gupta, Collins, Walling, Boilek, and other officers of National City. National City expressed an interest in providing financing, and the parties scheduled a follow-up meeting for September 7, 2000. Riley, Gupta, Collins, and the officers from National City attended the September 7, 2000, meeting, and a few days later, National City presented Illiana with a financing proposal. Collins then negotiated with National City regarding the terms of the loan, and on October 24, 2000, National City issued a loan commitment letter to Illiana and scheduled a closing. However, Collins was dissatisfied with some documentation and title insurance company fees, and the closing did not occur.

After additional negotiations, National City issued another commitment letter on April 5, 2001, which provided in part:

This commitment is an extension and modification of the original commitment letter dated and executed October 24, 2000 (Exhibit A.) National City does not relinquish any rights under the original commitment. This commitment reflects modifications to the structure and dollar amounts negotiated between National City and Borrower after the date of the original commitment.

Plaintiff's Exhibit 24. The loan then closed in April 2001.

From this evidence, the jury could have determined that Riley's efforts were sufficiently important in achieving the loan commitment that he "acquired" the loan commitment for Illiana. Thus, we conclude that the reasonable inferences from the evidence support the jury's verdict that Riley "acquired" the loan commitment. The jury's verdict is supported by substantial evidence of probative value. *See, e.g., Elkhart Cmty. Sch. v. Yoder*, 696 N.E.2d 409, 414 (Ind.Ct.App.1998) (holding that the "reasonable inferences drawn by the jury from the direct and circumstantial evidence before it were sufficient to support the jury's finding"). Illiana merely asks that we reweigh the evidence, which we cannot do. *Bob Schwartz Ford*, 631 N.E.2d at 955.

### VI.

The final issue is whether the jury's damage award is excessive. A jury determination of damages is entitled to great deference when challenged on appeal. *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind.2001). We will look only to the evidence and inferences therefrom which support the jury's verdict. *Id.* (citing *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind.Ct.App.1994), *reh'g denied, trans. denied*). We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable ground. *Id.* Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed. *Id.*

Here, the jury awarded damages of $121,000.00. As the contract required Illi-

ana to pay 0.5% of the "loan amount(s) that closes," the jury must have found a closing loan amount of $24.2 million. Plaintiff's Exhibit 1. The jury was presented with evidence that, according to Boilek,

National City had closed a $25 million relationship with Illiana and funded $13 million of the loan. Moreover, closing documents indicated that National City loaned the following to Illiana:

202. Principal Amount of new loan(s)      $ · 8,600,000

\* \* \* \* \*

206. Revolving Note (Full Amount $3,500,000)    $2,218,205.34
207. Term Loan ($500,000.00)
209. Construction Loan ($9,600,000.00)

Plaintiff's Exhibit 25. Thus, the closing documents indicated that National City loaned $22.2 million to Illiana and funded $10,818,205.34.

Further, on May 21, 2001, National City issued a loan commitment letter to Illiana, which provided, in part: "This letter reaffirms out commitment for Facility 6, 'Broadwest Acquisition' in our original commitment letter dated April 5, 2001." Plaintiff's Exhibit 27. As part of the May 21, 2001, commitment, National City agreed to loan Illiana up to an additional $2,000,000. Consequently, the jury was presented with evidence that National City loaned $24.2 million to Illiana.

Illiana points out evidence that the exhibits presented to the jury were conflicting and that the exhibits indicate that National City did not fund the entire loan amount. Illiana also contends that the jury was swayed by STG's references during its closing argument to the doctors cheating Riley out of his fee and the doctors' wealth. However, as noted by our supreme court, we will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable ground. *Sears Roebuck,* 742 N.E.2d at 462. The record contains evidence to support the amount of the damages awarded by the jury, and, as a result, we will not disturb the jury's award. *See, e.g., id.* at 463 (holding that there was

evidence to support the jury's determination of damages).

For the foregoing reasons, we affirm the trial court's denial of Illiana's motion for summary judgment, and the trial court's denial of Illiana's motion for judgment on the evidence, and the judgment in favor of STG.

Affirmed.

BAKER, J. and FRIEDLANDER, J. concur.