**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACK ARTHUR GRIFFIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  30A05-1112-CR-689 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable Terry K. Snow, Judge
Cause No. 30D01-1102-FB-199

**June 12, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Jack Arthur Griffin appeals his conviction and sentence for Burglary,[1] a class B felony. Specifically, Griffin argues that the evidence was insufficient to sustain his conviction and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding sufficient evidence and concluding that Griffin's sentence is not inappropriate, we affirm.

## FACTS

In June 2010, Griffin began dating Amanda Hamilton after attending her high school graduation party. Beginning in September 2010, Griffin would spend several nights a week at the home of Amanda's parents, Robert and Niki Hamilton, in Greenfield. Griffin kept some of his belongings at the Hamiltons' home but did not live there. Robert and Niki did not allow Griffin in their home by himself.

On January 20, 2011, Victoria Hamilton, Amanda's sister, was scheduled for surgery at 8:30 a.m. at Hancock Regional Hospital, which was visible from the Hamiltons' driveway. Griffin, who had spent the night, went with Amanda to the hospital around 9:00 a.m. and left sometime between 11:00 a.m. and noon.

While the Hamiltons waited at the hospital, Griffin entered their home by throwing a brick through the rear sliding glass door. Griffin stole several items, including $1600 from a safe under Victoria's bed, approximately $20 in change from Amanda's bedroom, approximately $200 in $2 bills from Robert and Niki's bedroom, and

[1] Ind. Code § 35-43-2-1.

approximately $30,000 in jewelry. Some of the items that were stolen were out of sight and known only to a few people while other valuable items were left behind.

Griffin returned to the hospital about thirty minutes later and remained there until 2:00 p.m. Griffin and Amanda returned to the Hamiltons' home, and Amanda reported the burglary.

Detective Ronald Chittum of the Greenfield Police Department suspected that because of the nature of what was stolen, the perpetrator was probably a friend or a relative. Amanda suggested Brad and Josh Hamilton, her cousins, as possible suspects. Griffin was at the house and observed Detective Chittum's initial investigation. Griffin appeared very nervous during the questioning process.

After the burglary, Griffin bought car stereo equipment and asked Robert to help him install it in his car. Griffin also got a tattoo, made a car payment, and had "money left over." Tr. p. 162.

On January 26, 2011, Griffin asked Niki how someone could make an anonymous tip to the police. That day, Griffin called Detective Chittum with what was at that time an anonymous tip, implicating Brad Hamilton as the person who had stolen some property that had been recovered at an apartment on Swope Street. Later that day, Griffin arrived at the Greenfield Police Department and told Officer Anthony Neumeister a very similar story. Officer Neumeister discovered that the tip was false and arrested Griffin.

On January 27, 2011, Detective Chittum and Detective Jon Anderson interviewed Griffin at the Hancock County Jail. Griffin admitted to making a false report, planting

3

twenty-one $2 bills, and having knowledge of the actual burglary. Griffin then told the officers that Amanda originated the plan for the burglary and that he recruited an old friend, Jake, to perform the burglary. Using the social networking site, Facebook, Griffin identified Timmy Wilson as "Jake." Tr. p. 172-73.

Griffin consented to a search of his vehicle. Police accounted for approximately $1552 worth of stolen goods. Additionally, the police investigated Wilson and determined that he was not involved in the burglary. Likewise, the police identified "Jake" as Jake Scroggins and concluded that he was not involved in the burglary. The police determined that Griffin committed the burglary alone.

On February 7, 2011, the State charged Griffin with Count I, burglary, a class B felony; Count II, possession or receiving stolen property, a class D felony; Count III, theft, a class D felony; and Count IV, false informing, a class B misdemeanor. Griffin's jury trial commenced on August 1, 2011, and Griffin was found guilty on all counts.

The trial court held a sentencing hearing on August 31, 2011, during which it vacated Count II. The trial court found three aggravating factors: 1) Griffin's criminal history; 2) Griffin committed the offenses while on probation; and 3) the fact that a reduced sentence would depreciate the seriousness of the crime.

Regarding Griffin's criminal history, although he was only nineteen years old at the time of sentencing, he had three previous felony convictions as an adult. These included one class C felony burglary and two class D felony theft convictions. One of

4

Griffin's theft convictions involved his stealing jewelry from the mother of a girlfriend with whom he had lived.

The trial court found two mitigating factors, namely, Griffin's reasonably young age and his apparent mental health issues. The trial court determined that the aggravating factors outweighed the mitigating factors. The trial court sentenced Griffin to concurrent terms of ten years with three years suspended followed by three years on probation on Count I, two years on Count II, and to 180 days on Count IV, for a total executed term of seven years in the Department of Correction (DOC). Griffin now appeals his burglary conviction[2] and his sentence.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Griffin argues that the evidence was insufficient to sustain his conviction for class B felony burglary. More particularly, Griffin maintains that he had consent to be in the Hamiltons' residence.

In reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor assesses the credibility of witnesses. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). Instead, we consider only the evidence favorable to the verdict and all reasonable inferences drawn therefrom. Id. This Court will affirm the conviction unless "no rational factfinder" could have found the defendant guilty beyond a reasonable doubt. Clark v. State, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

_____

[2] Griffin specifically points out in his Reply Brief that he "does not challenge the convictions for Class D felony theft and Class B misdemeanor false informing." Reply Brief p. 1 n.1.

Indiana Code section 35-43-2-1 provides, in relevant part, "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary. . . . [T]he offense is . . . a Class B felony if . . . the building or structure is a . . . dwelling." In addition, as recognized in Smith v. State, 477 N.E.2d 857, 862 (Ind. 1985), consent to enter is a defense to a burglary charge, and the jury in the instant case was instructed that when the defense of consent is raised, "the State has the burden of disproving the defense beyond a reasonable doubt. However, a Defendant's belief that he has permission to enter must be reasonable. . . ." Tr. p. 280.

In this case, Niki testified that Griffin was not authorized to be in the house alone. Tr. p. 40. Robert testified that Griffin was not given a key to the residence and that he specifically told Amanda that Griffin was not to be in the house by himself. Id. at 61. Indeed, Robert testified that he would be shocked if he would have found Griffin in the house alone. Id. at 78-79. Robert further explained on cross-examination that although Victoria's boyfriend, Logan, was permitted to be at the residence by himself, Griffin was not because Robert "didn't trust him." Id. at 80-81.

Like her parents, Amanda testified that Griffin was not permitted to stay at her house by himself. Tr. p. 104. Amanda explained that in the past, she had allowed Griffin to use her key to go into the house to get something while she waited outside but that she had not given Griffin her key to the house the day the home was burglarized. Id. It is also noteworthy that Griffin entered the home by throwing a brick through the rear sliding glass door. Under these facts and circumstances, a rational factfinder could

conclude that Griffin did not have the Hamiltons' consent to be in their home and that he committed class B felony burglary. Accordingly, this argument fails.

## II. Appropriateness of Sentence

Griffin argues that his sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). It is well established that sentencing is within the trial court's sound discretion and should receive considerable deference. Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Nevertheless, the Indiana Constitution authorizes independent appellate review and revision of sentences, which is implemented through Rule 7(B). Carroll v. State, 922 N.E.2d 755, 757 (Ind. Ct. App. 2010), trans. denied. In reviewing a sentence under Rule 7(B), "[u]ltimately the length of the aggregate sentence and how it is to be served are the issues that matter." Sanchez v. State, 938 N.E.2d 720, 722 (Ind. 2010).

Griffin was convicted of class B felony burglary, class D felony theft, and class B misdemeanor false informing. Ten years is the advisory sentence for a class B felony; one and one-half years is the advisory sentence for a class D felony. Ind. Code §§ 35-50-2-5, -7. Here, on the burglary conviction, Griffin was sentenced to "10 years to the [DOC] with 3 years suspended followed by 3 years probation . . . and a concurrent sentence of 2 years to the [DOC] on Theft and 180 days on False Informing." Appellant's App. p. 55-56.

As for the nature of the offenses, Griffin broke into and entered the home of his girlfriend's parents and stole over $30,000 worth of jewelry and money as the family

7

waited at the hospital during his girlfriend's sister's surgery.  Tr. p. 68-79.  Griffin, who had spent time at the Hamiltons' residence but did not live there, had intimate knowledge of the family's most prized possessions and used this knowledge to take advantage of them during a vulnerable time.  Id. at 43-48; 101-04; 197-99.

Then, to deceive the investigating officers, Griffin called in a false tip and attempted to frame one of Amanda's cousins and Griffin's friends for the burglary.  Tr. p. 48-50; 155-60.  When the officers discovered that Griffin's tip was false, he admitted to lying and planting evidence but then made up a story involving Amanda and randomly implicated someone on Facebook.  Id. at 158-74.  After changing his story several times, Griffin finally admitted his involvement.

Regarding Griffin's character, although Griffin was only nineteen years old at the time of sentencing, he had accumulated three unrelated felonies, namely, burglary and two thefts.  PSI p. 9.  Even more telling of Griffin's poor character, one of the theft convictions involved his stealing jewelry from the mother of a girlfriend with whom he had lived.  Id. at 6.  Moreover, Griffin steals to support his substance abuse problem and committed the instant offenses while on probation.  Id. at 6-13.  In light of the nature of the offenses and Griffin's character, we cannot say that his sentence is inappropriate and we decline his request to revise it.

The judgment of the trial court is affirmed.

KIRSCH, J., and BROWN, J., concur.

8